**Lawrence R. FAULKNER, Plaintiff,**

**v.**

**Clark CLIFFORD, as Secretary of Defense, Stanley Resor, as Secretary of the Army, Ramsey Clark, as Attorney General of the United States, Lewis B. Hershey, as Director of Selective Service of the United States, Col. John W. Brokaw, as Deputy State Director, Selective Service System of the State of New York, and Charles E. Artale, Robert J. Glasser, Thomas D. Kearney, Bernard Lavin and Joseph Noonan, as members of Selective Service Board No. 3, Defendants.**

**No. 68–C–808.**

United States District Court
E. D. New York.

Sept. 9, 1968.

Faulkner & Schmidt, New York City, by Stanley Faulkner, New York City, for plaintiff.

Joseph P. Hoey, U. S. Atty., Daniel A. Rago, Asst. U. S. Atty., of counsel, for defendants.

## MEMORANDUM and ORDER

TRAVIA, District Judge.

In this action, Plaintiff, Lawrence R. Faulkner, seeks: 1.) a preliminary injunction against his induction into the armed services; and 2.) the convening of a three-judge court under 28 U.S.C. §§ 2282 and 2284 (1964). He alleges that his threatened induction violates his rights under the First, Fifth and Sixth Amendments to the Federal Constitution. The Defendants, represented by the United States Attorney, contest the jurisdiction of this Court to consider the questions presented, citing 50 U.S.C. App. § 460(b) (3) (Supp.1968). The Defendants also oppose the request for a three-judge court. Because of the complexity of the issues involved, this opinion will deal first with the request for a three-judge court; second, with the question of jurisdiction; third, with the merits of the action; and lastly, with other procedural issues raised.

### I

The request for a three-judge court is the problem that may most easily be resolved. Plaintiff has requested an injunction against the en-

forcement of § 460(b) (3) on the ground that it is unconstitutional. While ordinarily such a request would fall within the statutory grounds for calling a three-judge court, in this situation, the request must be denied. Here, in fact, the Plaintiff is seeking to anticipate what is a defense to the primary action for an injunction against his induction into the armed services. The question is ancillary to the primary question before the Court; it is a question that goes to the jurisdiction of this Court in an action pending before it, and therefore is a question which must be resolved by this Court. An almost identical question was considered by a three-judge District Court in Petersen v. Clark, 285 F.Supp. 698 (N.D.Cal.1968), and that Court decided that it should dissolve itself and refer the question of jurisdiction to a single-judge Court. In the *Petersen* case, the court relied upon International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 58 S.Ct. 875, 82 L.Ed. 1316 (1938) and Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The constitutional question, decision of which would merely permit a court to take jurisdiction of the real questions in this action, would not appear to be a "case" within the meaning of 28 U.S.C. § 2282. See also Breen v. Selective Service Local Board No. 16, 284 F.Supp. 749 (D.Conn.1968), which reached the same decision on this point, also citing Flemming v. Nestor.

## II

On the primary question of a preliminary injunction, the threshold issue that this Court must face is that of jurisdiction. In the 1967 amendment to 50 U.S.C. App. § 460(b) (3), the following limitations were incorporated into the Universal Military Service and Training Act of 1940:

No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under Section [462], after the registrant has responded either affirmatively or negatively to an order to report for induction * * *: *Provided*, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant.

This prohibition on the exercise of judicial power in selective service cases might be interpreted in a number of ways. Literally, the statute would appear to suspend the writ of habeas corpus in these cases, leaving as the only remedy for an illegal classification the defense of a criminal prosecution. This interpretation of the statute, in the absence of clear Congressional intent to achieve this result, cannot be accepted. Constitution, Art. I, § 9; Mr. Justice Brandeis concurring in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–348, 56 S.Ct. 466, 80 L.Ed. 688 (1936); Brief of the Solicitor General in Oestereich v. Selective Service Local Board No. 11, No. 46, October Term, 1968. The amendment, it has been suggested, might be interpreted merely to restate pre-existing law, in an effort to prevent erosion of earlier-existing constructions of the statute. "Changes in the Draft: The Military Selective Service Act of 1967," 4 Columbia Journal of Law and Social Problems, 120, 156 (1968). While this interpretation has much to recommend it, there is no real support for it in either the Congressional debates or Committee Reports. Instead, the proper interpretation to be accorded this recent change in the law would appear to lie midway between these two extremes. It has been suggested that the Congressional intent in so amending the law was not to limit the federal courts in those instances in which a local selective service board violated an express statutory command in awarding a classification. Brief of the Solicitor General, supra. However, this is not really the problem presented here. Instead, the question is whether a proper

interpretation of the statute would reveal a congressional purpose to restrict review of action in violation of an asserted constitutional right, such as that to freedom of speech, by a local draft board. It appears clearly from the language of the statute, the legislative history, and the interpretation placed upon the law by other courts, that judicial review in such a situation is prohibited by the 1967 amendment. See the House Armed Services Committee Report, H.R.Rep. No. 267, 90th Cong., 1st Sess. 30 (1967), U.S.Code Cong. & Admin.News 1967, p. 1308:

> The committee was disturbed by the apparent inclination of some courts to review the classification action of local or appeal boards before the registrant * * * has been ordered to report for induction and has responded either affirmatively or negatively to such an order. In view of this inclination of the courts to prematurely inquire into the classification action of local boards, the committee has rewritten this provision of the law so as to more clearly enunciate this principle. The committee was prompted to take this action since continued disregard for the principle of the law by various courts could seriously affect the administration of the Selective Service System.

See also "Changes in the Draft: The Military Selective Service Act of 1967," supra at 157–59; Breen v. Selective Service Local Board No. 16, supra; Oestereich v. Selective Service System Local Board No. 11, 280 F.Supp. 78 (D.C.1968), aff'd 390 F.2d 100 (10th Cir. 1968), cert. granted, 391 U.S. 912, 88 S.Ct. 1804, 20 L.Ed.2d 651 (1968).

■ Accepting the fact that such a limitation on judicial power was intended by Congress, the question of the constitutionality of the statute then arises.[1] There can be no doubt of the power of Congress to limit the jurisdiction of Federal Courts in ordinary matters. Constitution, Art. III. "One hundred and seventy years of history stand in the way of those who would claim that Congress must vest the entire judicial power." Wright, Federal Courts 24 (1963). The problem nevertheless remains: is there any provision of the Federal Constitution which would limit the exercise of such power, and, if so, is this one of the instances in which exercise of an unquestioned Congressional power is limited by the express prohibition of another constitutional provision?

There can be little doubt today that there are some limits on the scope of Congressional action in this field. The cases decided under the Fifth Amendment indicate clearly that such limits on Congressional power do exist. It has been held in this Circuit that:

> while Congress has the undoubted power to give, withhold and restrict the jurisdiction of the courts other than the Supreme Court, it must not so exercise that power so as to deprive any person of life, liberty, or property without due process of law or to take private property without just compensation. * * *

Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir. 1948), cert. denied, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). There has been no occasion in which the Supreme Court has held that Congress could act to bypass the Federal judiciary *in toto* while depriving an individual of his rights under the Fifth

---

1. The Defendants have also raised the question of sovereign immunity, asserting that by 50 U.S.C. App. § 460(b) (3) the United States has withdrawn its consent to suit, and that this is, in effect a suit against the United States. Since this action is brought to enjoin threatened unconstitutional acts, it is difficult to see how this contention can be accepted. See Hart & Wechsler, Federal Courts and the Federal System 1175 (1953). See also cases cited in the dissenting opinion of Mr. Justice Frankfurter in Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 712–716, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

Amendment.[2] Those cases most frequently cited for the proposition of unlimited Congressional control of the jurisdiction of Federal Courts do not reach this conclusion; indeed, they clearly leave the question open. In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), the decision of the Court turned upon the question of exhaustion of administrative remedies. The claim was brought under the Fifth Amendment, and the case was later explained in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). In the *Estep* case, the Court found that the defense of an erroneous classification *could* be raised in a criminal prosecution. Both of these cases arose under the Fifth Amendment; in both the claim of the defendant was that the denial of judicial review of the administrative actions of a selective service board would violate the right to due process. In both, the Court did not reach the ultimate constitutional problem of the applicability of the Fifth Amendment, preferring to rest its decisions on the grounds of either exhaustion of administrative remedies or statutory construction. Another frequently cited case, Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), also involved claims under the Fifth Amendment. Again, the Court construed the statute so as to permit judicial review of administrative actions and the ultimate validity of the underlying statute, and held the procedures established compatible with due process.

On the other hand, there are a number of Supreme Court cases under the Fifth Amendment which cast serious doubt upon the assertion that Congressional control of judicial jurisdiction is unlimited. See, e. g., Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932); St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 84, 56 S.Ct. 720, 80 L.Ed. 1033 (1936). Again, all of these cases arose under the concept of due process as a limitation upon legislative action. Nevertheless, they are precedent for the conclusion that the power of Congress to make "exceptions" to the jurisdiction of federal courts may be limited by other parts of the Constitution.

■ In the light of these cases under the Fifth Amendment, it is not impossible to arrive at the conclusion that other provisions of the Constitution, equally important in their guarantees of individual liberty, might also serve to limit this power. The reasoning behind the application of the Fifth Amendment in the *Battaglia, Crowell* and *St. Joseph Stock Yards* cases would appear to be that there are some rights so fundamental to the individual that they may not be abridged even by action that would ordinarily be within the power of the legislature. The rights guaranteed to the individual by one clause of the Constitution may not be overridden by a power exercised under another part of that Constitution. To reach any other conclusion would be to render nugatory those guarantees of liberty embodied in the Constitution, to read the Constitution to destroy the Constitution. See Hart & Wechsler, Federal Courts and the Federal System 312 (1953).

■ It is clear that the rights protected by the First Amendment are central to any well-ordered concept of liberty. See, e. g., Emerson, Toward a General Theory of the First Amendment 3–15 (1966). Any governmental action which restricts or impairs those rights must be subject to the scrutiny of the courts, using the Constitution as a yardstick against which to measure the validity of the action taken. If there is any governmental action which prevents or inhibits the exercise of the right of free speech, or which has a "chilling effect" upon the exercise of that right, the statute permitting such action is clearly unconstitutional.

2. The Fifth Amendment is here used as an analogy for protection of First Amendment claims. For reasons discussed infra pp. 991, 992, the decisions under the Fifth Amendment have no direct application in this case.

The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded in such cases. See Baggett v. Bullitt [377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377]. For '[t]he threat of sanctions may deter * * * almost as potently as the actual application of sanctions. * * *' NAACP v. Button, 371 U.S. 415, 433 [,83 S.Ct. 328, 338, 9 L.Ed.2d 405]. Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser. * * * Moreover, we have not thought that the improbability of successful prosecution makes the case different. The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure.

Dombrowski v. Pfister, 380 U.S. 479, 486–487, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). See also National Association for the Advancement of Colored People v. State of Alabama ex rel. Patterson, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968).

The question, then, which is presented is whether § 460(b) (3), in the context of the Universal Military Training and Service Act, has such a "chilling effect" upon the exercise of a constitutionally protected right. Here, the Plaintiff has alleged that, in retaliation for the exercise of what he claims to be a form of speech protected by the First Amendment, his local draft board reclassified him I–A and delinquent, and ordered him to report for induction. In an effort to vindicate this exercise of the right of freedom of expression, the Plaintiff has brought an action for an injunction against his induction. The Defendants claim in response that § 460 (b) (3) prevents this Court from considering the merits—legal and factual—of this claim, and requires the immediate dismissal of the action. In effect, then, § 460(b) (3), coupled with the sections of the statute and regulations giving local draft boards the power to classify registrants, requires that this Plaintiff either submit to induction and seek review of his board's action through the writ of habeas corpus, or refuse to submit and seek such review as a defense to a criminal prosecution. In denying jurisdiction to this Court, § 460(b) (3) would prevent consideration of whether the Plaintiff's actions were constitutionally protected and whether the local board violated any of Plaintiff's constitutional rights. Plaintiff is required to remain under the threat of either immediate induction or criminal prosecution for the exercise of what he asserts are constitutionally protected rights. Additionally, since discretion to reconsider its reclassification decision lies totally with the local board, there is the possibility that any further actions by the Plaintiff will result in the denial of further petitions for reconsideration.

The right of free speech is one that has been jealously guarded and protected by the Courts. Any statute which has the effect of abridging that freedom must be scrutinized carefully; if the speech is protected by the First Amendment and if there is an abridgement of that protection, the Courts must act to prevent the infringement of that right. Insofar as § 460(b) (3) mandates a situation in which an individual must live in fear of criminal prosecution or induction into the armed services when he exercises what he believes to be a constitutionally protected First Amendment right, it is unconstitutional. While the possibility of abuse of a statute is no ground for declaring it unconstitutional, if, after such an abuse, or claimed abuse, there is no way open for the assertion of rights, the statute barring the way must be declared void. For these reasons, it is found that jurisdiction lies

in this Court to consider the merits—legal and factual—of this complaint.

■■■ The Plaintiff also raises questions under the Fifth and Sixth Amendments. In regard to the Fifth Amendment, he asserts that his classification was in violation of applicable statutory requirements, and that he is therefore threatened with deprivation of liberty without due process of law. Here, however, the situation is not the same as that in the case of his First Amendment claim. At the present time, Plaintiff has not been deprived of his liberty. A possible prosecution, in which he would have the opportunity to raise the legal questions presently asserted, would not constitute a deprivation of liberty without due process even if it resulted in a conviction. It is clear from the cases cited above, such as Estep v. United States, that Congress may, within the limits of the Fifth Amendment, restrict the assertion of such claims to a defense in a criminal action. The Fifth Amendment, as distinguished from the First, requires no more than this. The Plaintiff also asserts that he has been threatened with prosecution as a delinquent. The same reasoning would also apply here, and § 460(b) (3) would result in no unconstitutional infringement of liberty. This Court, therefore, has no jurisdiction to consider this claim.

Insofar as his Sixth Amendment claim is concerned, the Plaintiff has failed to allege in his complaint any circumstances which would justify a refusal to apply § 460(b) (3). While it is conceivable that the reasoning used above in relation to the First Amendment might be adapted to an assertion of rights under the Sixth Amendment, such a situation does not appear to arise here. The denial of Plaintiff's asserted right to the presence of counsel while facing a criminal prosecution as a delinquent has no relevance to the Plaintiff's classification as I–A, and his order to report for induction. While he may be able to rely on this assertion in defense of a possible criminal prosecution (a question upon which this Court does not pass), it

would not affect the validity of his I–A classification. Under § 460(b) (3) review of the Sixth Amendment claim in this Court would also be precluded.

### III

Having decided that this Court has jurisdiction, it is now possible to proceed to a consideration of the merits of the Plaintiff's claim. The Plaintiff has established that his local draft board reclassified him I–A and delinquent because he returned his registration certificate (SSS Form No. 2) to the local board. He has also established that his purpose in so returning that form was the desire to express dissent from United States policies in Viet Nam and from the draft. Plaintiff has raised serious questions of fact about the administration of the delinquency regulations that should be decided upon a full trial. The Plaintiff has shown that the local board was aware of his participation in protest activities at the time that he returned his registration certificate. See Government Exhibit A, p. 24. That Exhibit, a letter from Col. John W. Brokaw, deputy director of the New York State Selective Service, to the Plaintiff's local board contains the following language:

> We are enclosing a Registration Certificate (SSS Form 2) for a registrant of your local board which was turned into the Buffalo Selective Service Boards on October 18th 1967 *as a part of a demonstration against the draft.* (Emphasis added.)

■■■ After attempting appeals and seeking rehearings by his local board, the Plaintiff has instituted this action for an injunction on the ground, among others, that the notice of delinquency and his classification as I–A constitute an unconstitutional abridgement of his right to freedom of expression under the First Amendment. The considerations involved are similar to those in Oestereich v. Selective Service Local Board No. 11, No. 46, 1968 Term. Here, Plaintiff contends that he was entitled to a II–S deferment, while in *Oestereich* the deferment which was urged was IV–D, one

for divinity students. Certiorari has been granted in the *Oestereich* case and, as Chief Judge Zavatt of this Court has pointed out in Linzer v. Selective Service Local Board No. 64, Civ. No. 68–C–110 (E.D.N.Y. April 29, 1968), the Supreme Court may:

pass upon the question as to whether or not the return of a draft card or a registration card comes within the constitutional right of freedom of speech; whether the delinqunecy provisions of the Regulations violate the due process clause of the Constitution; how Section 10(b) (3) is to be interpreted in cases involving delinquency and reclassification.

Considering: 1.) that the Plaintiff has shown some likelihood of success in the trial of this action; 2.) that the damage to the plaintiff in denying this preliminary injunction at this stage would be overwhelmingly great; and 3.) that many of the issues presented in this case are presently pending before the Supreme Court, the request for a preliminary injunction is granted. The Defendants may, if they wish, move to vacate this injunction upon the Supreme Court decision in the *Oestereich* case.

## IV

Finally, Defendants have moved to strike a portion of the Plaintiff's testimony in the hearing of this action, relating to the presence of a Mr. Markey at a local board hearing. It is the opinion of this Court that this testimony was admissible, as relevant to the questions of possible prejudicial conduct on the part of the draft board and possible unfair administration of the regulations governing this case. The motion should, therefore, be denied.

## CONCLUSION

1.) The request for the convening of a three-judge District Court is denied.

2.) The application for a preliminary injunction to stay induction of the Plaintiff pending the final disposition of this case was granted, with leave to move to vacate upon the decision of the Supreme Court in the Oestereich case.

3.) The motion to strike certain portions of the Plaintiff's testimony is denied.

So ordered.