George **HYKEL**
and
**Havertown Savings and Loan Association**
v.
**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION.**
**Civ. A. No. 70–1093.**

United States District Court,
E. D. Pennsylvania.
June 16, 1970.

John G. Harkins, Jr., James T. Giles, Philadelphia, Pa., for plaintiffs.

Warren Mulloy, Asst. U. S. Atty., Arthur W. Leibold, Jr., Gen. Counsel Federal S. & L. Ins. Corp., Philadelphia, Pa., Jeffrey F. Axelrad, Dept. of Justice, Washington, D. C., for defendant.

Before KALODNER, Circuit Judge, LORD, Chief District Judge, and TROUTMAN, District Judge.

## OPINION

PER CURIAM.

On March 5, 1970, plaintiff Hykel, who is the President and a Director of the Corporate plaintiff, was named a defendant in two of six counts of an indictment returned by a Grand Jury for the Eastern District of Pennsylvania. United States of America v. George Hykel et al., Criminal Number 70–104. The indictment alleges that with respect to two separate loans plaintiff Hykel acted dishonestly and in breach of his fiduciary duties in violation of 18 U.S.C.A. § 371 and 18 U.S.C.A. § 1006. Pursuant to section 407(h) of the National Housing Act, 12 U.S.C.A. § 1730(h), the Federal Savings & Loan Insurance Corporation, acting through the Federal Home Loan Bank Board, sent Hykel a Notice of Suspension.

On April 22, 1970, four days after receipt of this notice, plaintiffs filed a complaint which prayed for all necessary and proper relief including a declaration that section 407(h) of the National Housing Act is unconstitutional. On the same date plaintiffs made an application for a Temporary Restraining Order and Stay which would stay the effect of the Suspension Notice. After oral argument by both plaintiff and defendant, Chief Judge John W. Lord, Jr., on April 23, 1970, granted plaintiffs' application. Due to the nature of the relief sought plaintiffs also requested the appointment of a Three-Judge Court. 28 U.S.C.A. §§ 2282 and 2284. On April 25, 1970, Chief Judge William H. Hastie of the Third Circuit appointed Circuit Judge Harry E. Kalodner and District Judge E. Mac Troutman to sit with Chief Judge Lord for the determination of this case.

Section 407(h) of the National Home Loan Act provides in pertinent part:

Whenever any director or officer of an insured institution, * * * is charged in any information, indictment, or complaint authorized by a United States Attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the Corporation may, by written notice served upon such director, officer, or other person, suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the institution. A copy of such notice shall also be served upon the institution. Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the Corporation. * * *

Moreover, section 407(p) (1), 12 U.S.C.A. § 1730(p) (1) of the same Act makes it a separate criminal offense, punishable by imprisonment for not more than one year or a fine of not more than $5,000 or both, for failure to honor the suspension notice.

Presently before the Three-Judge Court is plaintiffs' motion for a Preliminary Injunction as well as defendant's motion to dismiss. In support of their motion plaintiffs have argued that they are suffering irreparable harm and have a reasonable likelihood of ultimately suc-

ceeding on the merits.[1] Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319 (3rd Cir. 1967). With respect to their claim on the merits plaintiffs allege that section 407(h), 12 U.S.C.A. § 1730(h), is unconstitutional in that (1) it constitutes a bill of attainder; (2) it violates substantive due process and (3) it violates procedural due process. Defendant's motion to dismiss, on the other hand, is based on subsection (k) (2) of section 407, 12 U.S.C.A. § 1730(k) (2) which provides in part:

> * * * except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate or set aside any such notice or order.

█ The instant case falls squarely within the ambit of the above-quoted subsection and it is clear that the plain meaning of (k) (2) withholds jurisdiction from the federal court to act at this time. At the May 11th hearing counsel for plaintiffs did argue in passing that subsection (k) (2) could be interpreted to prohibit a federal court from acting only where the remedy sought was among those specifically designated in the subsection, and that since he ultimately sought a declaratory judgment, a remedy not expressly proscribed, subsection (k) (2) would not act as a bar under the facts of this case. Counsel did not strenuously pursue this line of argument and candidly admitted that such an interpretation would render the language of the subsection "or otherwise" meaningless and would, at best, be a strained interpretation of (k) (2). (N.T. p. 20). The Court finds, and counsel for plaintiffs basically agrees, that the clear meaning of subsection (k) (2), which is directly applicable to the facts in the instant case, precludes this lower federal court from considering the merits of plaintiffs' case. Accordingly, the sole remaining question with respect to defendant's motion to dismiss is whether Congress could constitutionally so limit this Court's jurisdiction.

[2] It is a well-established proposition that, unlike the jurisdiction of the Supreme Court, the jurisdiction of the lower federal courts can, at least to some degree, be controlled by Congress. This fact was evidenced by the very Act which created the lower federal courts, the Judiciary Act of 1789, where Congress clearly chose not to vest the newly created courts with all the jurisdiction enumerated in Article III of the Constitution. While there has been some lingering dissent with respect to this position,[2] it has been frequently stated[3] and generally followed by the courts.[4]

In the instant case, we are of the opinion that the Congressional withholding of jurisdiction at this time prescribed by sub-section (k) (2) does not transgress constitutional guarantees.

---

1. Plaintiffs also made a motion, pursuant to Rule 65(a) (2) of the Federal Rules of Civil Procedure to advance the hearing or trial on the merits and to consolidate it with the hearing on Plaintiffs' Motion for a Preliminary Injunction. The Government objected to this motion.

2. Mr. Justice Story adhered to the position that Congress had a moral duty to both create inferior federal courts and grant them all the jurisdiction Article III enumerated. See Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 4 L.Ed. 97 (1816). Eisentrager v. Forrestal, 84 U.S.App.D.C. 396, 174 F.2d 961 (1949), r'vd sub. nom on other grounds, Johnson v. Eisentrager, 339 U.S. 763, 70 S.Ct. 936, 94 L.Ed. 1255 (1950). 5 Moore, Federal Practice ¶ 38.08 [2], at 52 n. 3 (2d ed. 1968).

3. In the Law of Federal Courts, (2d ed. 1970) Professor Charles Alan Wright states at p. 26, "There is so much authority for the proposition that Congress is free to grant or withhold the judicial power that it might seem unnecessary to belabor the point."

4. See e. g., Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943); Cary v. Curtis, 44 U.S. (3 How.) 236, 11 L.Ed. 576 (1845); Turner v. Bank of North America, 4 U.S. (4 Dall.) 8, 1 L.Ed. 718 (1799).

■ There is no question that privately operated, federally insured, savings institutions play a critical role in our economy and therefore undoubtedly constitute a legitimate subject of Congressional action.[5] Moreover, this Court finds that subsection (k) (2) is reasonably related and calculated to accomplish the effective regulation of those financial institutions which avail themselves of federal insurance. Obviously, Congress has a substantial interest in maintaining effective regulation of, and public confidence in, these institutions. It is equally clear that a federal indictment of a director or officer of a savings and loan association for a crime involving dishonesty or breach of trust may raise doubts as to the soundness of the institution itself. Congress, after hearings which included a joint statement that the existing remedies for moving quickly and effectively were inadequate by the then (March 1966) Secretary of the Treasury, the Chairman of the Board of Governors of the Federal Reserve System, the Chairman of the Federal Home Loan Bank Board and the Chairman of the Federal Deposit Insurance Corporation,[6] found it appropriate to give the Bank Board [7] the power to suspend such a director during the pendency of the indictment. Congress, through subsection (k) (2) also deemed it necessary, at least in a proceeding of the type presently before the Court, to preclude judicial review of such a suspension. The Court finds this bar to the Court's deciding the merits of plaintiffs' claim reasonably related to the Congressionally desired end to effectively regulate and manage the insured institutions so as to maintain public confidence in the particular institution as well as the system itself even though a director or officer be under federal indictment. We also find that if judicial review were allowed at this time one of the very ends to which Congress was addressing itself in 1966, through the Financial Institutions Supervisory Act, may well be undermined. Without the temporary suspension of such a director or officer, unfettered by injunctions which stay the effect of the notice, individuals may well deem it imprudent to maintain accounts in that institution and may even lose confidence in the entire system.

■ The Court also finds that subsection (k) (2) does not violate procedural due process, a concept developed to provide the individual with adequate safeguards from governmental encroachment on his personal property or liberty. In this light it should be noted very specifically that (k) (2) does not totally preclude judicial review or insulate forever this legislation from judicial scrutiny. Section 407(p) (1), 12 U.S.C.A. § 1730(p) (1) makes it a criminal offense

---

5. *E. g.* Norman v. Baltimore & Ohio R.R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935); *See* Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) ; *accord* Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 38 L.Ed. 385 (1894). The impact that the Federal Savings and Loan Corporation has, excluding the Federal Deposit Insurance Corporation, is readily evidenced by the following data: As of December, 1968, the Federal Savings and Loan Insurance Corporation insured the savings of over 43 million account holders in 4,470 insured savings and loan associations with assets in excess of $147 billion dollars. 36th Annual Report of the Federal Home Loan Bank Board (1968).

6. 89th Cong., 2d Sess., S.Rept.No.1482, pp. 4–5.

7. The Supervisory Act granted identical authority to the Board with respect to the suspension and removal of directors and officers of Federal savings and loan associations [12 U.S.C.A. § 1464(d) (5) (A)], and to the Comptroller of the Currency with respect to directors and officers of national banks, the Federal Reserve Board with respect to directors and officers of State member insured banks, and the Federal Deposit Insurance Corporation with respect to State nonmember insured banks. 12 U.S.C.A. § 1818(g) (1). Moreover, 12 U.S.C.A. §§ 1464(d) (8) and 1818(i), as does the instant provision 12 U.S.C.A. § 1730(k) (2), withhold jurisdiction from the courts to affect a suspension by injunction.

to participate in the affairs of the institution after a Notice of Suspension has been issued. While (k) (2) does not expressly provide that the validity or constitutionality of the Notice may be raised as a defense in the criminal action which would result from the failure to abide by the Notice, it is conceded by the Government that such is the case.[8] Therefore Congress has not totally precluded judicial review, but rather deferred it until such time as the notice is disregarded. While undoubtedly this is a severe precondition to judicial review, it is not unique[9] and since we find adequate safeguards are provided and subsection (k) (2) constitutional, it is not a justification for disregarding the clear meaning of the statute. We find this to be particularly true where, as here, we are dealing with an Act of Congress and not merely a regulation promulgated by an administrative agency. While it may be argued that Congress could have adopted a less severe statutory scheme,[10] it is not the function of this Court to sit as a super-legislature and substitute its judgment for that of Congress'. Our review is directed not to the wisdom of the statute in question but rather to whether the decision of Congress to defer judicial review of section 407(h) until after the Notice is disregarded is constitutional. We find that it is.

The Court finds support for its conclusion that withholding jurisdiction at this proceeding is not unconstitutional from an analogous area of law. Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 460 (b) (3) (Supp. IV 1969) provides in effect[11] that there shall be no judicial review of the classification or processing of any registrant, except as a defense to a criminal prosecution for refusing to be inducted.[12] Therefore, § 10(b) (3), like subsection (k) (2), bars the court from proceeding to the merits of a plaintiff's claim prior to his risking criminal sanctions. However, unlike (k) (2), section 10(b) (3) has recently undergone close judicial scrutiny.

In the recent Supreme Court case of Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), the Court, in a per curiam opinion, affirmed Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), and upheld the constitutionality of section 10(b) (3). In reaching this conclusion the Court reversed the lower court,[13] which had held that to condition judicial review on the risk of incurring a substantial penalty amounted to "no review at all" and therefore violated due process. The Supreme Court reasoned that to allow preinduction review in the case before it (plaintiff was challenging the Board's decision to deny his request to be classified as a conscientious objector) would be to permit exactly the evil which Congress was concerned with when they passed 10(b) (3) i. e., litigious interruptions to the orderly induction of men into the armed services. As this Court has discussed earlier, we also find that to

---

8. Brief for Government at p. 5. See also N.T. p. 7.

9. See the discussion of Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C.App. § 460(b) (3) (Supp. IV 1969) *infra*.

10. But see 89th Cong.2nd Sess., S.Rept. pp. 5–6.

11. The statute provides in part:
    "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted

* * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form; * * *."

12. It has also been consistently held that a registrant may challenge his classification by first submitting to induction and then instituting a habeas corpus proceeding.

13. Gabriel v. Clark, 287 F.Supp. 369 (N.D. Calif.1968).

allow a court to stay the effect of the suspension notice in this proceeding would permit exactly what Congress was attempting to prevent: a director or officer who has been federally indicted for a crime involving a breach of his fiduciary duty remaining in a position where he can control the institution's funds.

On the same day the Court decided *Gabriel* they also decided, in a 5–3 decision, with Mr. Justice Harlan joining the majority in a concurring opinion, the leading case of Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 234, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). In *Oestereich*, the Court carved out an exception to the general rule which they affirmed in *Gabriel*, that pre-induction review was only available in a defense to a criminal action or through habeas corpus. In that case after the registrant, a divinity student, turned in his registration certificate in protest against the war in Vietnam, the local board declared him a delinquent for failure to have the certificate in his possession and ordered him to report for induction. The Court was faced with a situation where the Act [section 6(g) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 456(g)] exempted divinity students from training and service, and the regulations promulgated by the administrative agency [section 1642.4, 32 C.F.R. § 1642(a)] withdrew the exemption by providing that whenever a registrant failed to perform "any duty" required of him the Board could declare him to be "a delinquent". This effectivedly meant he would be inducted.[14]

The Court established the exception to the general rule when it concluded that where there is a "clear departure by the Board from its statutory mandate" *Oestereich*, 393 U.S. at 238, 89 S.Ct. at 416, section 10(b) (3) would not be read to preclude pre-induction review.

The Court reexamined its position in Breen v. Selective Service Local Board Number 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) where it held that 10(b) (3) did not preclude pre-induction judicial review where the Act "deferred" an individual as well as "exempted" him, as the case in *Oestereich*. The Court concluded 396 U.S. at pages 467–468, 90 S.Ct. at p. 666 that "in both situations a draft registrant who was required by the relevant law not to be inducted was in fact ordered to report for military service. In both cases the order for induction involved a 'clear departure by the Board from its statutory mandate.' Oestereich, supra, at 238, 89 S.Ct. at 416, and in both cases § 10(b) (3) of the Act should not have been construed to require the registrant to submit to induction or risk criminal prosecution to test the legality of the induction order." (citation omitted).

Unlike the Supreme Court in *Oestereich* and *Breen* this Court is not faced with a situation where the administrative agency acted in a "blatently lawless manner", *Oestereich* 393 U.S. at 238, 89 S.Ct. 414, or clearly departed from its statutory mandate. Indeed in the instant case the Federal Home Loan Bank Board undeniably acted in complete accord with the spirit and meaning of its statutory mandate—§ 407(h). Furthermore, both *Oestereich* and *Breen* involved situations where there was an unconditional statutory mandate that the individual be deferred or exempted. In *Gabriel*, on the other hand, the Court was faced with a case where the Board had been authorized by the statute to exercise its discretion.[15] Like the situation in *Gabriel*, the underlying statute in the present case, 407(h) is, by its very language, discretionary in that it states that the Corporation "may" suspend the indicted director or officer. Therefore this Court concludes that the present

---

14. The Selective Service Act stated that the "prime age group" are to be first inducted after delinquents and volunteers. 50 U.S.C.A.App. § 456(h) (1) (Supp. III 1964).

15. 50 U.S.C.A.App. 456(i) (Supp. III 1964).

case is more closely analogous to the situation in *Gabriel* where the Court found the withholding statute a valid limitation on the Court's jurisdiction.

Since the Court finds that subsection (k) (2), 12 U.S.C.A. § 1730(k) (2), bars this Court from exercising jurisdiction so as to interfere with the Notice of Suspension, we shall grant defendant's motion to dismiss and therefore do not reach the merits of plaintiffs' claim.

And it is so ordered.