Bernard **FEINBERG**, Plaintiff,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION and Alan R. Miller, Defendants.**

Civ. A. No. 74–1150.

United States District Court, District of Columbia.

Nov. 27, 1974.

Ralph A. Muoio, Richard W. Skillman, John F. Dienelt, Washington, D. C., for plaintiff.

James J. Sexton, Gen. Counsel, Reford J. Wedel, Deputy Gen. Counsel, Federal Deposit Ins. Corp., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

This action challenges the constitutionality of § 8(g)(1) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(g)(1), which provides for temporary suspension from office of a bank officer who has been indicted for a felony involving dishonesty or breach of trust. The case is before the Court on plaintiff's application for a three-judge court, his motion for a preliminary injunction, and defendants' motion to dismiss. For reasons set forth *infra,* the Court finds it lacks subject matter jurisdiction and accordingly grants defendants' motion to dismiss.

On May 9, 1973, plaintiff was named a defendant in a nine count felony indictment charging mail fraud under 18 U.S.C. § 1341. The indictment alleges a fraudulent scheme to evade property taxes owed to Cook County and the City of Chicago, Illinois, in two properties owned by plaintiff. At the time of the indictment, plaintiff was the president and a director of the Jefferson State Bank, Chicago, Illinois, an insured non-member bank of defendant Federal Deposit Insurance Corporation ("Corporation"). On February 8, 1974, the Corporation's Board of Directors, acting pursuant to § 1818(g) (1), issued a Notice and Order of Suspension which suspended plaintiff from his position as president and director.

Section 1818(g)(1) provides in pertinent part:

"(g)(1) Whenever any director or officer of an insured bank, or other person participating in the conduct of the affairs of such bank, is charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the appropriate Federal banking agency may, by written notice served upon such director, officer, or other person suspend from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the bank."

\* \* \* \* \* \*

"Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency."

Jurisdiction for enforcement of any outstanding Notice or Order of Suspension is conferred upon the United States district courts by § 8(i) of the Act, 12 U.S.C. § 1818(i), which also provides:

" . . . except as otherwise provided in this section no court shall

have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order."

Defendants contend that § 1818(i) is a flat statutory withdrawal of jurisdiction over plaintiff's constitutional attacks on § 1818(g)(1). Plaintiff, while not contesting the constitutionality of § 1818(i) on its face, nevertheless urges the Court to ignore the section on grounds it acts to perpetuate the vitality of § 1818(g)(1) thereby compounding the constitutional injury. The Court views this position as essentially a due process attack on the jurisdictional withdrawal statute itself and will consider it as such.

This Court's jurisdiction over justiciable cases and controversies derives, of course, from Art. III, Sec. 1 of the Constitution which provides in part:

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."

The notion that all federal courts, other than the Supreme Court, derive their jurisdiction from the authority conferred upon Congress by Art. III, Sec. 1 is one of the most time tested in our Nation's judicial history. *See* Sheldon v. Sill, 49 U.S. (8 How.) 441, 448–449, 12 L.Ed. 1147 (1850); Lockerty v. Phillips, 319 U.S. 182, 187, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943). *Cf.* Palmore v. United States, 411 U.S. 389, 401, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973). When, as in the present case, Congress decides to withdraw jurisdiction from the federal courts, our inquiry is a narrow one limited to deciding whether the cause of action in question was of the type which Congress sought to remove from federal judicial review. If the action is so plainly outside the scope of that which Congress desired to protect from our examination, it follows, *a fortiori,* that the action may proceed assuming jurisdiction otherwise exists.

Thus, for example, in the case of the Anti-Injunction Act, 26 U.S.C. § 7421 (a), which prohibits suits for the purpose of restraining the assessment or collection of any federal tax, the Supreme Court has held that the Act is inapplicable if "it is clear that under no circumstances could the Government ultimately prevail." Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The Court's rationale in *Enochs* was that in such cases the exaction is merely in the "guise of a tax" and hence allowing judicial intervention would not frustrate the Act's purpose of insuring the uninterrupted collection of legitimate taxes. *Ibid.*

Similarly, in cases arising under the Military Selective Service Act of 1967, 50 U.S.C.A.App. §§ 451–473, the Supreme Court has permitted limited judicial review despite § 10(b)(3) of that Act, 50 U.S.C.A.App. § 460(b)(3), which proscribes judicial review of the classification or processing of any registrant, except as a defense to a criminal prosecution for refusing to be inducted. In Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968), the Court upheld the constitutionality of § 10(b) (3) on grounds that to allow preinduction review would create the sort of disruption which Congress sought to prevent when it passed § 10(b)(3), namely, "litigious interruptions of procedures to provide necessary military manpower." *Id.* at 258, 89 S.Ct. at 426. *Accord,* Fein v. Selective Service System Local Board No. 7, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972). But on the same day it decided *Gabriel,* the Court allowed preinduction review in another Selective Service case. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). In that case, the Selective Service granted appellant a divinity student exemption only to revoke it a short time later on account of appellant's delinquency in not complying with certain Selective Service regulations. The Court found that the Board

had acted in a lawless manner in depriving appellant of a statutory exemption because of conduct "unrelated to the merits of granting or continuing that exemption." *Id.* at 237, 89 S.Ct. at 416. In finding that the case involved a "clear departure by the Board from its statutory mandate," the Supreme Court concluded that to consider the action barred by § 10(b)(3) would be "to construe the Act with unnecessary harshness." *Id.* at 239, 89 S.Ct. at 416. In essence, the Court found § 10(b)(3) inapplicable because the Board's challenged actions were outside the scope of the relevant statutory authority which Congress sought to protect when it passed § 10 (b)(3). *Accord,* Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970).

Turning to the facts of the instant case, there can be no doubt that the Corporation's conduct in issuing a Notice and Order of Suspension comported fully with the prescriptions of § 1818(g) (1). Plaintiff, as an officer and a director of an insured bank, was a member of the group specified by the section. He had been indicted for a felony by a federal Grand Jury. The charges of mail fraud contained in the indictment plainly involved instances of dishonesty. Each and every element of § 1818(g)(1) had been satisfied. In no way can it be said that the Corporation's conduct involved a clear departure from its statutory mandate.[1]

In a case involving the same issues as the case at bar, as well as identical statutory language contained in the National Housing Act, 12 U.S.C. §§ 1730(h) and (k)(2), a three-judge court in Hykel v. Federal Savings and Loan Insurance Corp., 317 F.Supp. 332 (E.D.Pa.1970),

found that privately operated, federally insured, savings institutions were a legitimate subject of Congressional action. *Id.* at 335. Accordingly, the Court held that the jurisdictional withdrawal statute was "reasonably related and calculated to accomplish the effective regulation of those financial institutions which avail themselves of federal insurance." *Ibid.* In language equally applicable to the present case, the Court in *Hykel* observed:

> "Obviously, Congress has a substantial interest in maintaining effective regulation of, and public confidence in these institutions [savings and loan associations]. It is equally clear that a federal indictment of a director or officer of a savings and loan association for a crime involving dishonesty or breach of trust may raise doubts as to the soundness of the institution itself." *Ibid.*

Congress was no less concerned with maintaining confidence in the banking system when it passed §§ 1818(g)(1) and (i). In fact the bills considered by the Congressional committees which were ultimately enacted into 12 U.S.C. §§ 1730(h) and (k)(2), also resulted in the passage of 12 U.S.C. §§ 1818(g)(1) and (i). A review of the pertinent legislative history shows a Congressional purpose to "strengthen the regulatory and supervisory authority of Federal agencies over insured banks and insured savings and loan associations."[2] Regardless of the wisdom of barring judicial intervention, it is quite apparent that jurisdictional withdrawal is clearly calculated in this case to further such a Congressional purpose.

Finally, it should be noted that § 1818(i) does not deprive plaintiff of

---

1. Thus, the present case is readily distinguishable from Manges v. Camp, 474 F.2d 97 (5th Cir. 1973), where § 1818(i) was found inapplicable because the Comptroller of the Currency had acted outside his statutory authority in prohibiting plaintiff from participating in the affairs of a bank whose stock he had begun to acquire five years *after* he had pled guilty to federal charges of mak-

ing false statements to the Small Business Administration.

2. Report of the Senate Committee on Banking and Currency, S.Rep.No.1482, 89th Cong., 2d Sess. 1 (1966), U.S.Code Cong. & Admin. News, p. 3532.

See also, Report of the House Committee on Banking and Currency, H.R.Rep.No.2077, 89th Cong., 2d Sess. (1966).

ultimate judicial review of his suspension. As defendants have acknowledged, the validity of a suspension order would be subject to review in a criminal prosecution for violation of that order under § 8(j) of the Act, 12 U.S.C. § 1818 (j). Similarly, review of the order would lie in an action by the Corporation for its enforcement. 12 U.S.C. § 1818(i).[3] While the decision to disobey an Order of Suspension may indeed be a harsh precondition to judicial review, it must be ultimately balanced against Congressional interest in maintaining public confidence in the banking system. In view of the very real dangers which could result to the financial integrity of a banking institution were its indicted president or a director allowed to continue in office, the Court is convinced that this balance plainly lies in the public's favor.

The Court finding it lacks jurisdiction over the subject matter of this action by virtue of 12 U.S.C. § 1818(i), defendants' motion to dismiss is granted.

---

3. See Memorandum in Support of Defendants' Motion to Dismiss, note 15.