Bernard FEINBERG, Appellant,

v.

The FEDERAL DEPOSIT INSUR-
ANCE CORPORATION et al.

No. 74–1970.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1975.

Decided Nov. 17, 1975.

Richard W. Skillman, Washington, D.
C., with whom Ralph A. Muoio and John
F. Dienelt, Washington, D. C., were on
the brief for appellant.

**1336**

James J. Sexton, Counsel, Federal Deposit Ins. Corp., with whom Earl J. Silbert, U. S. Atty., Burton L. Raimi, Asst. Gen. Counsel, Douglas H. Jones, Atty., Federal Deposit Ins. Corp., were on the brief for appellee. John A. Terry and Gerard F. Treanor, Jr., Asst. U. S. Attys., also entered appearances for appellee.

Before TAMM and MacKINNON, Circuit Judges, and JAMESON,* Senior United States District Judge for the District of Montana.

TAMM, Circuit Judge:

In this action, plaintiff-appellant Bernard Feinberg challenges the constitutionality of sections 8(g)(1) and 8(i) of the Federal Deposit Insurance Act, 12 U.S.C. §§ 1818(g)(1) and 1818(i) (1969), and seeks to enjoin the Federal Deposit Insurance Corporation [hereinafter Corporation] and its agents from enforcing a Notice and Order of Suspension issued against him under section 8(g)(1). The issue on appeal is narrowly confined to whether the district court erred in denying appellant's application for a three-judge court and in dismissing his complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Because we hold that appellant's complaint raises substantial constitutional questions required to be heard and determined by a three-judge court under 28 U.S.C. §§ 2282 and 2284, we must remand the case to the district court. We reach no decision on the merits of appellant's constitutional claims except insofar as we determine that they rise to the threshold level of substantiality requiring convention of a three-judge court.

### I. The Factual Background

Prior to February 8, 1974, appellant had served for 14 years as president and as a director of the Jefferson State Bank of Chicago, Illinois. In 1973 his annual salary was $55,000. In addition, appellant owns 28% of the bank's outstanding stock and, as administrator of his deceased brother's estate, manages another 23%, making him the controlling shareholder. The bank's accounts are insured by the Federal Deposit Insurance Corporation.

In May of 1973, appellant was indicted by a federal grand jury on nine counts of mail fraud under 18 U.S.C. § 1341. The indictment alleged participation in a fraudulent scheme to evade property taxes by, *inter alia*, submitting to the Cook County Board of Appeals certain altered building permits indicating that buildings on various properties had been razed and that the lots were vacant when, in fact, the buildings had been standing and occupied during the relevant tax period. Appellee's Br. at 1.

On February 8, 1974, nine months after the indictment,[1] the Corporation issued a Notice and Order of Suspension under section 8(g)(1) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(g)(1), suspending Feinberg from his positions as president and director of the bank and prohibiting his further participation in the bank's affairs until disposition of the indictment or termination of the order by the Corporation.[2] Section 8(g)(1) provides in relevant part:

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. At a hearing on several motions held October 15, 1974, the Corporation explained that the nine-month delay between the indictment and the eventual issuance of the suspension order resulted from its repeated negotiations with Feinberg and his attorneys in an attempt to persuade him to resign voluntarily. Tr. at 20–21. In its Opposition to Motion for Summary Reversal, the Corporation said that these efforts were "met with continued representations by counsel for appellant that various pre-trial matters and discussions with the United States Attorney would imminently result in dismissal or lessening of the charges against appellant. After repeated delays engendered in this manner by appellant's representatives," the suspension order was finally issued.

2. Appellant's trial was substantially delayed. Because the Government had refused to comply with a pre-trial discovery order of the district court, the trial judge ordered the suppression of certain evidence. The Government then appealed to the United States Court of Appeals for the Seventh Circuit. On Septem-

Whenever any director or officer of an insured bank, or other person participating in the conduct of the affairs of such bank, is charged in any information, indictment, or complaint authorized by a United States attorney, with the commission of or participation in a felony involving dishonesty or breach of trust, the appropriate Federal banking agency may, by written notice served upon such director, officer, or other person suspend him from office and/or prohibit him from further participation in any manner in the conduct of the affairs of the bank. A copy of such notice shall also be served upon the bank. Such suspension and/or prohibition shall remain in effect until such information, indictment, or complaint is finally disposed of or until terminated by the agency.

. . .

12 U.S.C. § 1818(g)(1) (1969).

On July 31, 1974, appellant filed a complaint in the District Court for the District of Columbia [3] in which he sought convention of a three-judge court under 28 U.S.C. §§ 2282 and 2284 and a declaration by that court that section 8(g)(1) is unconstitutional on its face in that it authorizes the Corporation to effect a substantial deprivation of liberty and property without satisfying minimal due process requirements. Specifically, appellant claimed that the lack of any standards other than the mere fact of a felony indictment, and the lack of any provision in the Act for notice, hearing, or judicial review of section 8(g)(1) suspension orders, rendered the Notice and Order of Suspension against him void;

consequently, he sought to enjoin its enforcement.

The Corporation responded with a motion to dismiss for lack of subject matter jurisdiction predicated on section 8(i) of the Act. That section provides in pertinent part:

[E]xcept as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i) (1969). The statute makes no other provision for judicial or administrative review of section 8(g)(1) suspension orders, either before or after their issuance. In addition, the Corporation argued that appellant's complaint should be dismissed for failure to state a claim upon which relief can be granted, i. e., for failure to present a substantial constitutional claim requiring convention of a three-judge court.

Appellant's motions for convention of a three-judge court and for a preliminary injunction, along with appellee's motion to dismiss, were heard on October 15, 1974. At the conclusion of the arguments, the trial judge granted appellee's motion to dismiss, stating:

The Court feels that the Congress acted within its Constitutional authority, by statute specifically withdrew jurisdiction from the United States District Court here, and also finds that § 8(g)(1) clearly constitutes a valid exercise of Congressional power in an

ber 12, 1974, the Seventh Circuit affirmed four of five discovery orders of the district court and reversed one. The Seventh Circuit denied appellant's petition for rehearing on October 15, 1974. Appellant's Br. at 5–6.

On June 13, 1975, the Government moved to dismiss the indictment and to proceed to trial on a superseding six-count indictment. The trial finally commenced on June 19, and on June 27, 1975 appellant was found guilty on four counts of mail fraud under 18 U.S.C. § 1341 and not guilty on the remaining two counts. *United States v. Feinberg*, No. 75 CR 400 (N.D.Ill., filed June 27, 1975), *appeal dock-*

*eted*, No. 75–1763, 7th Cir., August 18, 1975. Thus more than two years have elapsed between appellant's indictment and the final disposition of his case. The suspension order prohibited him from voting his stock or participating in the affairs of the bank for approximately sixteen months prior to his trial.

3. Appellant claims that he did not institute this action immediately after the issuance of the suspension order because he believed that the indictment would be disposed of promptly. Appellant's Br. at 5.

area in which the Congress clearly has jurisdiction.

Record at 26–27. The court thus found both that it lacked jurisdiction to hear the case due to the statutory withdrawal provision and that appellant's complaint failed to raise substantial constitutional claims requiring convention of a three-judge court. Appellee's Br. at 34. Because we believe that the constitutionality of sections 8(g)(1) and 8(i) may be reasonably questioned insofar as they operate together to deprive appellant of his job and the right to vote his stock without the benefit of a hearing or any type of administrative or judicial review, we hold that the constitutional issues raised in the complaint are substantial and are required to be heard and determined by a three-judge court.

## II. Jurisdiction and Standard of Review

In recent years the three-judge court has come under close scrutiny. Many commentators have argued that the three-judge court statutes, 28 U.S.C. §§ 2281 (injunction against enforcement of State statute) and 2282 (injunction against enforcement of Federal statute), have outlived their original usefulness in protecting state and federal statutes from invalidation by a single district judge and should therefore be eliminated as a needless waste of judicial resources. *See, e. g.*, *MTM, Inc. v. Baxley*, 420 U.S. 799, 808, 95 S.Ct. 1278, 43 L.Ed.2d 636 (1975) (Douglas, J., dissenting), *citing* Statement of Charles Alan Wright, *Hearings on S.1876 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary*, 92d Cong., 2d Sess. 763, 773 (1972). Moreover, under the current status of the law, substantial difficulties can, and often do, arise as to whether initial decisions should be made by a single judge or three judges and as to whether appeals should be to the courts of appeals or to the Supreme Court. 420 U.S. at 809, 95 S.Ct. 1278 (Douglas, J.,

dissenting). It is now well established, however, despite a somewhat confusing evolution,[4] that where a single district judge dismisses an action for failure to state a claim upon which relief can be granted, or for lack of jurisdiction, appeal lies to the court of appeals, and not to the Supreme Court, even though the case on its merits would be required to be heard by a three-judge court. *Schackman v. Arnebergh*, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); *Wilson v. City of Port Lavaca*, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636 (1968); *Mengelkoch v. Industrial Welfare Commission*, 393 U.S. 83, 89 S.Ct. 60, 21 L.Ed.2d 215 (1968); *Hicks v. Pleasure House, Inc.*, 404 U.S. 1, 92 S.Ct. 5, 30 L.Ed.2d 1 (1971). *Cf. MTM, Inc. v. Baxley, supra.*

The statute upon which appellant bases his request, 28 U.S.C. § 2282, prohibits a district court or judge thereof from granting an injunction restraining the execution of an Act of Congress "unless the application is heard and determined by a district court of three judges." When an action requires hearing and determination by a three-judge court, 28 U.S.C. § 2284 then requires the single district judge to whom the application for relief is presented "immediately [to] notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge." Thus, on paper the requirement of the statute appears relatively simple. In practice it is not, however, since the statute leaves to the district judge the vexing initial determination of whether an action is required to be heard and determined by a three-judge court.

█ A single district judge need not request that a three-judge court be convened if a case raises no substantial claim or justiciable controversy. *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Ex parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152

---

4. *See generally*, Currie, *The Three-Judge District Court in Constitutional Litigation*, 32 U.Chi.L.Rev. 1 (1964).

(1933). Constitutional claims may be regarded as insubstantial if they are "obviously without merit," or if their "unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." *Ex parte Poresky, supra* at 32, 54 S.Ct. at 4; *American United, Inc. v. Walters,* 155 U.S.App.D.C. 284, 477 F.2d 1169 (1973), *rev'd on other grounds,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Bulluck v. Washington,* 152 U.S.App.D.C. 39, 468 F.2d 1096 (1972). Under this standard, it is clear, for example, that a single adverse holding in another circuit would not necessarily render a petitioner's constitutional arguments insubstantial.

In many cases, however, there may be considerable room for argument over whether particular constitutional claims are so frivolous, or so foreclosed by prior decisions, as to be too insubstantial for jurisdiction. For example, should the single district judge have dismissed the challenge to the Tennessee legislative apportionment scheme in *Baker v. Carr*[5] on the basis of the Supreme Court's decision in *Colegrove v. Green,* 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946). When precisely does a constitutional question become foreclosed by decisions in analogous cases? These are the kinds of difficult questions confronting a single district judge presented with a request for a three-judge court. As both parties note in their briefs, this determination of substantiality is rarely mechanical and often demands of the district judge an exceedingly close analysis of petitioner's constitutional claims vis-a-vis prior case law.

■ When the district judge denies a request for a three-judge court and dismisses the case for want of a substantial constitutional question, this court must reverse if it finds that the questions raised *were* substantial. *Bulluck v. Washington, supra.* With this standard in mind, we now turn to petitioner's constitutional claims.

## A. The Substantiality of Appellant's Constitutional Claims

■ We cannot agree with the conclusion of the trial court that appellant's constitutional claims are so insubstantial as to warrant dismissal without convention of a three-judge court. We, of course, express no view as to the ultimate merits of appellant's claims, but we conclude that developments in the due process area involving deprivations of liberty and property arguably no greater than those claimed by appellant bring his constitutional claims within the range of substantiality according to the test articulated in *Ex parte Poresky; American United, Inc. v. Walters,* and *Bulluck v. Washington, supra.* Thus appellant is entitled to have his claims heard and determined by a three-judge court.

Appellant claims that the Notice and Order of Suspension[6] issued against him under section 8(g)(1) of the Federal Deposit Insurance Act has deprived him of liberty and property within the meaning

---

5. A three-judge court was in fact convened. The trial judge stated prophetically that:

   Whether *Colegrove v. Green* requires a dismissal of the present action is a question which can be fully considered and determined by a three-judge court. For present purposes it is enough to say that there are differences between that case and the present one that may ultimately prove to be significant.

   175 F.Supp. 649, 652 (M.D.Tenn.1959). *See generally,* Currie, *supra,* at 20–29.

6. The order suspended him from his positions as president and director and prohibited his further participation in the affairs of the bank. Under 12 U.S.C. § 1818(j), it is a criminal offense, punishable by imprisonment for one year, a $5,000 fine, or both for appellant directly or indirectly to exercise his voting rights in *any* bank. Thus, under the government's interpretation of the Act, appellant can challenge the validity of the order only by subjecting himself to criminal penalties.

of the due process clause.[7] The conclusion is unavoidable that the Corporation's order effectively deprives appellant of the ability to engage in his chosen profession[8] and of his property interests in his salary and in voting his stock, as well as that which he holds as administrator of his deceased brother's estate. *See Manges v. Camp,* 474 F.2d 97, 100 n.3 (5th Cir. 1974). The issue is thus whether, given the nature of the individual and governmental interests involved, this deprivation was effected in a manner consistent with the requirements of the due process clause. *Compare Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *with Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is uncontested that the Corporation's order was issued solely by reason of Feinberg's indictment, without any accompanying administrative proceedings and without provision for administrative or judicial review either before or after the order became effective. In the wake of Supreme Court decisions extending the due process rights of notice, disclosure of adverse evidence, and the opportunity to be heard, to confront and cross-examine witnesses, and to present evidence, we believe it beyond question that appellant would be entitled to the benefit of a hearing or some form of administrative proceeding absent a compelling governmental interest temporarily overriding his right to the full complement of due process safeguards.[9]

In response to appellant's argument that a hearing is *prima facie* required whenever the government acts to deprive an individual of liberty or property, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Corporation argues that the special nature of the banking industry and the important governmental interest in preserving public confidence in the banking system at least temporarily override normal considerations of procedural fairness and justify dispensing with a hearing prior to the issuance of section 8(g)(1) suspension orders. In support of its argument that summary suspensions of certain individual rights and other legal disabilities may be effected upon indictment for a felony, the Corporation calls our attention to a number of cases upholding the federal

---

7. Appellant also argues that § 8(g)(1) contravenes the presumption of innocence and violates the equal protection clause insofar as it appears to discriminate against those indicted for federal, rather than state, offenses. Because we hold that appellant's due process claim is required to be heard and determined by a three-judge court, we find it unnecessary to rule on the substantiality of these claims.

8. The term "liberty" has been broadly construed to include the right "to engage in any of the common occupations of life." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). *See also, Schware v. Board of Bar Examiners,* 353 U.S. 232, 238, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

9. The precise demands of the due process clause of course vary considerably according to the nature and importance of the individual and governmental rights involved and the governmental interest in avoiding delay. The right to a hearing has been extended, *inter alia,* to those facing parole revocation, *Morrissey v. Brewer,* 408 U.S. 471, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); termination of welfare benefits, *Goldberg v. Kelly,* 397 U.S. 254, 266–71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and debarment from federal contracts, *Gonzales v. Freeman,* 118 U.S.App.D.C. 180, 188, 334 F.2d 570, 578 (1964). *See generally, Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Various levels of protection have been required to satisfy due process requirements in a multitude of cases involving a wide range of situations, including *Ahern v. Board of Educ.,* 456 F.2d 399, 403 n.2 (8th Cir. 1972) (discharge of public school teacher); *Caulder v. Durham Housing Authority,* 433 F.2d 998 (4th Cir. 1970), *cert. denied,* 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971) (termination of leave in federally-assisted housing project); *Frost v. Weinburger,* 375 F.Supp. 1312, 1325–26 (E.D.N.Y.1974) (hearing on reduction of social security benefits); *Ortwein v. Mackey,* 358 F.Supp. 705, 714–15 (M.D.Fla.1973) (termination of non-tenured member of university faculty); *Givens v. Poe,* 346 F.Supp. 202, 209 (W.D.N.C.1972) (dismissal of students from public school); and *Jones v. Robinson,* 142 U.S.App.D.C. 221, 224, 440 F.2d 249, 252 (1971) (transfer of defendant committed to mental facility).

statutory provisions [10] which prohibit the transportation or possession of firearms or ammunition in interstate commerce by persons under felony indictment. *See, e. g., United States v. Brown,* 484 F.2d 418 (5th Cir. 1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); *United States v. Craven,* 478 F.2d 1329 (6th Cir. 1973), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *United States v. Thoresen,* 428 F.2d 654 (9th Cir. 1970); *United States v. DePugh,* 266 F.Supp. 453 (W.D.Mo. 1967), *aff'd* 393 F.2d 367 (8th Cir. 1968), *cert. denied,* 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

These cases may well be distinguishable, based upon the nature and importance of the personal and governmental interests involved. Although we need not decide that issue, we find the possible distinction, along with the holdings of the Supreme Court in *Morrissey* and *Goldberg,* sufficient to enable plaintiff to meet the substantiality requirement. Plaintiff's constitutional claims are not so insubstantial as to be frivolous or "obviously without merit," and they entitle him to a hearing before a three-judge court.

B. *Jurisdiction to Consider the Constitutionality of Section 8(g)(1)*

■ The second basis for the trial court's dismissal of this action was section 8(i), which purports to withdraw the jurisdiction of any court to "affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order."

The Corporation places great reliance upon *Hykel v. Federal Savings and Loan Insurance Corp.,* 317 F.Supp. 332 (E.D. Pa.1970), a three-judge case involving a statutory scheme analogous to the one at issue here. In *Hykel,* the three-judge court held that it lacked jurisdiction to review the validity of a provision identical in language to section 8(g)(1), 12 U.S.C. § 1730(h), and based its decision to dismiss on a withdrawal provision substantially similar to section 8(i). 12 U.S.C. § 1730(k)(2). Thus *Hykel* clearly supports the Government's argument that the trial court correctly determined that it lacked jurisdiction to determine the constitutionality of section 8(g)(1).

It is crucial, however, to remember the standard with which we must review the trial court's decision to deny appellant's request for a three-judge court. Although *Hykel* supports the Government's position, a single adverse decision in another circuit does not by itself meet the standard of foreclosure enunciated in *Ex parte Poresky*; *American United, Inc. v. Walters,* and *Bulluck v. Washington, supra.* [11]

It is not disputed that a single district judge may dismiss an application for a three-judge court for lack of standing or jurisdiction without determining the substantiality of the constitutional questions presented. *Dawkins v. Mitchell,* 141 U.S. App.D.C. 213, 437 F.2d 646 (1970); *National Council on the Facts of Overpopulation v. Caplin,* 224 F.Supp. 313 (D.D.C. 1963). *See also* Note, *The Three-Judge District Court and Appellate Review,* 49 Va.L.Rev. 538, 557 (1963). However, it is impossible in this action to fully separate jurisdictional issues from constitutional ones. Appellant does not argue that section 8(i) is unconstitutional on its face or that jurisdictional withdrawal provisions are automatically inapplicable where constitutional claims are involved. Appellant's Br. at 28–30. Rather, appellant maintains that the section 8(i) withdrawal provision compounds the seriousness of his plight by purporting to cut off all review of an allegedly unconstitu-

---

**10.** 18 U.S.C. § 922(g) and (h) (1968) and its predecessor, 15 U.S.C. § 902.

**11.** We, of course, need not intimate any opinion as to whether *Hykel* was correctly decided

in order to conclude that it does not render appellant's claims frivolous or "obviously without merit."

tional statute. In sum, appellant's claim is that the "combined effect" of sections 8(g)(1) and 8(i) exceeds the broad bounds of congressional power to limit judicial review of administrative action because, if section 8(g)(1) operates to deprive appellant of liberty and property without due process, then section 8(i) serves to insulate an unconstitutional statute from any judicial review whatsoever. Although it is well established that Congress possesses broad powers to determine the jurisdictional limits of lower federal courts, *see* Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic,* 66 Harv.L.Rev. 1362 (1953); P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's *The Federal Courts and the Federal System,* 360–75 (2d ed. 1973), it is also well established that Congress may not exercise that power to deprive any person of life, liberty, or property without due process of law. *St. Joseph Stockyards Co. v. United States,* 298 U.S. 38, 51–52, 56 S.Ct. 720, 80 L.Ed. 1033 (1936); *Battaglia v. General Motors Corp.,* 169 F.2d 254, 257 (2d Cir. 1948), *cert. denied,* 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). *See also Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932); *Faulkner v. Clifford,* 289 F.Supp. 895, 899 (E.D.N.Y.1968), *appeal dismissed,* 393 U.S. 1046, 89 S.Ct. 676, 21 L.Ed.2d 600 (1969).

The Supreme Court recently lent some support to appellant's arguments in *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), a case involving the scope of the anti-injunction provision of the Internal Revenue Code, 26 U.S.C. § 7421(a). Although the Court specifically held that jurisdictional withdrawal provisions are not automatically inapplicable where constitu-

tional claims are raised, it qualified this holding by stating:

> This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different.

*Id.* at 746, 94 S.Ct. at 2050. Unlike the provisions of the Internal Revenue Code before the Court in *Bob Jones University,* the Federal Deposit Insurance Act makes no provision whatsoever for administrative review before issuance of section 8(g)(1) suspension orders. Nor does appellant have recourse to anything resembling the refund suit available to persons seeking judicial review of administrative denials of refund claims. Thus appellant "is faced with the Draconian choice of risking criminal prosecution or allowing the suspension order to go unchallenged." Appellant's Br. at 33–34.[12]

We conclude that, if section 8(g)(1) were determined to be unconstitutional, a substantial question would be raised as to the constitutionality of the section 8(i) withdrawal provision insofar as it operates to insulate section 8(g)(1) from any form of judicial review. *Compare Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) *with Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). There is no sharp dichotomy here between jurisdictional and constitutional issues. In effect, to dismiss appellant's constitutional challenge to the section 8(g)(1) order on the basis of the section 8(i) withdrawal provision is to decide the merits of his constitutional claims.

## III. Conclusion

For the foregoing reasons, we remand this case to the district court with instructions to grant appellant's request for a three-judge court. We express no view on the merits of appellant's consti-

---

12. If the court determines that the governmental need for expeditious action justifies dispensing with a *prior* hearing, it should then address the question whether a hearing *subse-* quent to the issuance of a section 8(g)(1) suspension order is required in order to insure appellant due process protection.

tutional arguments other than to find that they are not "obviously without merit" or clearly foreclosed by prior decisions.

Upon remand, the district court should proceed in accordance with 28 U.S.C. § 2284 to convene a three-judge court to determine whether section 8(g)(1) is constitutional insofar as it authorizes the Corporation to issue a suspension order upon the mere fact of a felony indictment without provision for prior or subsequent judicial or administrative review. Against the personal liberty and property interests at stake, the three-judge court must weigh the governmental interests in protecting the monies deposited by citizens in federally insured banks and maintaining public confidence in the highly regulated banking industry, as well as the need for swift action once a grand jury has found probable cause to indict a bank officer, director or employee for an offense involving dishonesty or breach of trust.[13] If the court should determine after considering all the arguments that section 8(g)(1) is unconstitutional, it will then have to decide whether section 8(i) can withstand constitutional scrutiny insofar as it appears to insulate section 8(g)(1) from any form of judicial review.[14] Under 28 U.S.C. § 2282, a three-judge court is the proper tribunal to make these determinations.

*So ordered.*

---

**13.** The court should also consider the question of whether appellant's conviction and sentencing on four counts of mail fraud in any way affect the appropriate disposition of this case.

**14.** Similarly, the conscription cases upholding a statutory provision precluding judicial review of military draft classifications prior to induction which the Corporation cites in its brief, *Clark v. Gabriel*, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968); *Fein v. Selective Service System*, 405 U.S. 365, 92 S.Ct. 1062, 31 L.Ed.2d 298 (1972), are distinguishable. The Supreme Court emphasized in *Clark v. Gabriel* that a Selective Service registrant did not have to risk criminal prosecution, but could have his classification reviewed in a habeas corpus proceeding following his induction. 393 U.S. at 259, 89 S.Ct. 424. A bank officer or director suspended under section 8(g)(1) would have no recourse but to defy the suspension order and risk criminal penalties or to await final disposition of his indictment or termination of the order by the Corporation.