Jeannine HONICKER

v.

Joseph M. HENDRIE, Victor Gilinsky, Richard Kennedy, Peter Bradford, John Ahearne, United States Nuclear Regulatory Commission.

No. 78–3371–NA–CV.

United States District Court,
M. D. Tennessee,
Nashville Division.

Jan. 12, 1979.

Joel Kachinsky, Summertown, Tenn., for plaintiff.

Irvin H. Kilcrease, Jr., Asst. U. S. Atty., Nashville, Tenn., E. Leo Slaggie, Sheldon L. Trubatch, James L. Kelley, Stephen F. Eilperin, U. S. Nuclear Regulatory Commission, Washington, D.C., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

Plaintiff Jeannine Honicker brought this action seeking an injunction ordering defendants, members of the United States Nuclear Regulatory Commission (the NRC), to revoke the licenses of all nuclear fuel cycle facilities within the jurisdiction of the Commission. According to plaintiff, nuclear power production activities sanctioned by defendants pose an unavoidable health haz-

ard to plaintiff and others that will cause United States citizens and foreign nationals to suffer disease and death in this and future generations. Plaintiff contends, therefore, that defendants' licensing of nuclear fuel cycle facilities deprives plaintiff and others of life without due process of law in violation of the United States Constitution and fails to assure adequate protection of the public health and safety in violation of 42 U.S.C. § 2011 et seq. Prior to instituting this suit, plaintiff filed a petition with the NRC requesting emergency and remedial action by that body to grant essentially the same relief that plaintiff presently seeks in this court. The NRC denied the request for emergency relief but has been and is currently considering all other aspects of the case pursuant to appropriate sections of 10 C.F.R. pt. 2 (1978)[1] and the general supervisory powers of the NRC. At this juncture the court is faced with the question, presented by defendants' motion to dismiss, of whether or not the court has subject matter jurisdiction over this action. For the reasons hereinafter stated, the court has concluded that it does not.

First, plaintiff has failed to exhaust the available administrative remedies as required by the general rule that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644 (1938); see, e. g., Coalition for Safe Nuclear Power v. United States Atomic Energy Commission, 150 U.S.App. D.C. 118, 463 F.2d 954 (1972); Concerned Citizens of Rhode Island v. Nuclear Regula-

tory Commission, 430 F.Supp. 627 (D.R.I. 1977); Nader v. Ray, 363 F.Supp. 946 (D.D. C.1973). But see Drake v. Detroit Edison Co., 443 F.Supp. 833 (W.D.Mich.1978). When applicable, the exhaustion doctrine precludes a court from asserting jurisdiction over the controversy until the administrative process has been completed. See, e. g., Concerned Citizens of Rhode Island v. Nuclear Regulatory Commission, supra, 430 F.Supp. at 632. In the present case, both the Atomic Energy Act, 42 U.S.C. § 2239(a), and the regulations of the NRC, 10 C.F.R. §§ 2.200–2.206 (1978) and 10 C.F.R. § 2.802 (1978), allow "any person" to request the institution of a proceeding to revoke the licenses of nuclear fuel cycle licensees or to issue, amend, or rescind any regulations. Plaintiff has in fact availed herself of these administrative remedies by filing the petition for emergency and remedial action with the NRC that preceded this lawsuit, and the NRC is actively engaged in evaluating the petition. Under these circumstances, it is apparent that plaintiff has not exhausted the prescribed administrative remedy.

None of the exceptions to the exhaustion requirement that would excuse plaintiff's failure to exhaust are applicable to the facts of this case. Had plaintiff brought this suit to challenge the constitutionality of the basic statutes, the Atomic Energy Act of 1954[2] and the Energy Reorganization Act of 1974,[3] which authorize the NRC to regulate the development of nuclear energy, exhaustion might not be necessary. See 3 K. Davis, Administrative Law Treatise § 20.04 (1958). Instead, plaintiff relies upon the provisions of those acts to estab-

1. In order to obtain the views and recommendations of its technical staff before taking any action, the NRC initially treated plaintiff's petition as an enforcement proceeding pursuant to 10 C.F.R. § 2.206 (1978), which allows any person to request the institution of a proceeding under § 2.202 to modify, suspend, or revoke a license, or for such other action as may be proper. After receiving the response of the NRC staff, the NRC concluded that plaintiff's petition primarily constituted a challenge to the adequacy of the NRC's regulations and licensing standards and that it should be addressed by the NRC itself consistent with 10 C.F.R.

§ 2.802 (1978) and the NRC's general supervisory powers. See Second Addendum to Plaintiff's Brief on the Jurisdiction of the District Court To Hear Her Cause, Exhibits 3–4 (letters of September 7, 1978, and December 6, 1978, to plaintiff from the Secretary of the NRC). 10 C.F.R. § 2.802 provides in pertinent part: "Any interested person may petition the Commission to issue, amend, or rescind any regulation."

2. 42 U.S.C. § 2011 et seq.

3. 42 U.S.C. § 5841 et seq.

lish the statutory standard that she claims defendants have violated. Had the case presented a pure question of law, as plaintiff asserts it does, it would be cognizable in this court even in the absence of exhaustion, because the fact-finding expertise of the agency would be unnecessary for the resolution of the claim. *See K. Davis, Administrative Law of the Seventies* § 20.01 (1976). The NRC's expertise, however, is necessary in this case to determine whether or not the alleged hazards of disease or death are created by the operation of the nuclear fuel cycle. Were the administrative remedy under consideration futile or inadequate, then the court could excuse plaintiff's failure to exhaust. *See, e. g., Spanish International Broadcasting Co. v. Federal Communications Commission,* 128 U.S.App. D.C. 93, 104, 385 F.2d 615, 626 (1967); *Nader v. Ray, supra,* 363 F.Supp. at 954. Pursuant to procedures established by the NRC, however, persons such as plaintiff may request the NRC to revoke the licenses of nuclear power producers, or to alter the agency's own regulations, and the NRC is expressly empowered to grant such relief. Since no exception to the exhaustion requirement is applicable in this case, plaintiff's failure to exhaust bars relief in this court.

■■ Second, even if plaintiff had exhausted the available administrative remedies, this court could not assume jurisdiction to review the action of the NRC, because that jurisdiction is vested exclusively in the United States courts of appeals. *See Nader v. Ray, supra,* 363 F.Supp. at 954; *Wright, Miller, Cooper & Gressman,* 16 *Federal Practice and Procedure: Jurisdiction* § 3943 (1977). Pursuant to 42 U.S.C. § 2239(b), final orders entered in either NRC license revocation or rulemaking proceedings are subject to judicial review in the manner prescribed in 28 U.S.C. § 2342(4) and the Administrative Procedure Act. The latter provision states that the form of proceeding for review of administrative action is "the special statutory review proceeding relevant to the subject matter in a court specified by statute . . . ." 5 U.S.C. § 703. This is an implicit reference to 28 U.S.C.

§ 2342(4), which provides that the court of appeals "has exclusive jurisdiction to enjoin, set aside, suspend (in whole or part), or to determine the validity of" orders of the NRC made reviewable by 42 U.S.C. § 2239. The only judicial forum provided by statute that is available to plaintiff is, therefore, the court of appeals. *See, e. g., Gage v. United States Atomic Energy Commission,* 156 U.S.App.D.C. 231, 235, 479 F.2d 1214, 1218 (1973); *Paskavitch v. United States Nuclear Regulatory Commission,* 458 F.Supp. 216, 217 (D.Conn.1978); *Concerned Citizens of Rhode Island v. Nuclear Regulatory Commission, supra,* 430 F.Supp. at 630; *Izaak Walton League of America v. Schlesinger,* 337 F.Supp. 287, 290 (D.D.C.1971). *But see Drake v. Detroit Edison Co.,* 443 F.Supp. 833 (W.D.Mich.1978). This exclusive statutory review mechanism also prevents plaintiff from following other avenues of so-called "nonstatutory review" of administrative action in this court by invoking general jurisdictional statutes such as 28 U.S.C. § 1331 or § 1361. Nonstatutory review is available only in the absence of a specific statute authorizing review in a particular court. "Where Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial review in those situations to which it applies." *Memphis Trust Co. v. Board of Governors of the Federal Reserve System,* 584 F.2d 921, 925 (6th Cir. 1978) (citing *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 419–23, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965)); *see, e. g., Nader v. Volpe,* 151 U.S.App.D.C. 90, 466 F.2d 261 (1972); *Sun Enterprises, Ltd. v. Train,* 394 F.Supp. 211 (S.D.N.Y.1975). *See generally* Note, *Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals,* 88 Harv.L.Rev. 980 (1975). Jurisdiction in this court cannot be predicated upon any theory of judicial review of agency action.

■ Finally, plaintiff cannot circumvent the strict jurisdictional limits on judicial review of NRC action by arguing that her complaint is not a petition for *review* of agency action, but rather is a proceeding

seeking *initial relief* in the courts. Even if this court did have subject matter jurisdiction over plaintiff's claim,[4] the doctrine of primary jurisdiction would require that the court stay its hand until the "agency charged by Congress with the responsibility of regulating the subject matter has had an opportunity to apply its expertise to the question at issue . . . ." *Paskavitch v. United States Nuclear Regulatory Commission, supra*, 458 F.Supp. at 217; *see, e. g., Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970); *Southern Railway Co. v. Combs*, 484 F.2d 145 (6th Cir. 1973). Application of this doctrine is particularly appropriate here. Determination of a highly complex and controversial[5] question of nuclear science, the effect on human health of the low level radiation exposure allegedly produced by the ordinary operation of the nuclear fuel cycle, would be crucial to an adjudication in this case. Certainly, expertise in the field of nuclear science would facilitate such a determination. The NRC possesses this expertise; the court does not. *See, e. g., Paskavitch v. United States Regulatory Commission, supra*, 458 F.Supp. at 217; *Nader v. Ray, supra*, 363 F.Supp. at 953. Furthermore, this case implicates fundamental questions of national policy concerning the development of nuclear energy, and therefore it should be decided by the agency in which Congress has vested the power and discretion to make these important policy choices. As stated recently by the United States Supreme Court:

Nuclear energy may some day be a cheap, safe source of power or it may not. But Congress has made a choice to at least try nuclear energy, establishing a reasonable review process in which courts are to play only a limited role. The fundamental policy questions appropriately resolved in Congress and in the state legislatures are not subject to reexamination in the federal courts under the guise of judicial review of agency action. Time may prove wrong the decision to develop nuclear energy, but it is Congress or the States within their appropriate agencies which must eventually make that judgment.

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 557–58, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460, 488 (1978). In light of this emphatic language approving the procedure Congress· has selected to deal with the nuclear energy question, it seems inadvisable for this court to address the problem because the NRC, which is already considering the matter, has not yet made the factual findings or policy decisions necessary for the resolution of this case.

▮ Plaintiff insists that defendants have admitted that an imminent peril to plaintiff's health and life exists as a result of the operation of the nuclear fuel cycle, and that therefore the only question facing the court is whether or not this hazard violates plaintiff's constitutional and statutory rights. If this assessment of the situation were accurate, the court would not feel

---

**4.** Plaintiff has cited a number of statutes in an effort to establish the jurisdiction of this court over the present case. Of these, the only two that in principle might provide jurisdiction are the federal question and mandamus jurisdictional statutes, 28 U.S.C. § 1331 and 28 U.S.C. § 1361, but in the present case these are supplanted by the exhaustion doctrine and the provisions for exclusive court of appeals review of NRC action. The All Writs Act, 28 U.S.C. § 1651, provides only for the power of a federal court to issue writs once its jurisdiction has been established, and does not of itself confer jurisdiction. *See, e.g., Sears, Roebuck and Co. v. NLRB*, 433 F.2d 210 (6th Cir. 1970); *Thompson Products, Inc. v. NLRB*, 133 F.2d 637 (6th Cir. 1943). None of the acts of which plaintiff complains were performed under color of state law for purposes of 42 U.S.C. § 1983, and so plaintiff cannot maintain this as a civil rights action pursuant to that statute. Finally,· the judicial review provisions of the Administrative Procedure Act cited by plaintiff, 5 U.S.C. § 702 and § 706, do not provide an independent basis of jurisdiction, as the United States Supreme Court has recently made clear in *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

**5.** At the hearing held on October 2, 1978, plaintiff's counsel conceded that a divergency of opinion exists among experts in the field concerning the amount of radiation exposure necessary to cause cancer or other deleterious health effects in human beings. Transcript at 120–21.

constrained by the doctrine of primary jurisdiction and would not hesitate to act to protect plaintiff's rights. The statements upon which plaintiff relies cannot, however, be characterized as admissions that ordinary fuel cycle activities will cause death or disease to plaintiff or any other persons.[6] An evaluation of the facts by the NRC is

6. Plaintiff has construed portions of Federal Defendants' Answers to Plaintiff's Interrogatories (filed October 2, 1978) and the NRC Staff Response to the Jeannine Honicker Petition for Emergency and Remedial Action (filed December 5, 1978, as an attachment to Federal Defendants' Supplemental Response to Motion for Expedited Consideration) to be the alleged admissions. Relevant excerpts of these documents demonstrate conclusively that plaintiff has misinterpreted defendants' statements.

In the interrogatories, the following questions were posed and responses given:

6. State with specificity the number of fatalities of cancer, which you expect to be caused by the continuing operation of the nuclear fuel cycle under your licenses from October 2, 1978 to October 2, 1979.

The commission is not aware of any theory or experimental data that would enable it to make a specific prediction of the number of fatalities if any, which will result during the specified period from licensed fuel cycle activities. Furthermore, there is no conclusive evidence that ionizing radiation results in carcinogenic effects at the low dose rates produced by the nuclear fuel cycle. However, as part of the Commission's decision-making process and regulatory program, the NRC estimates the potential carcinogenic effect of radiation on populations by assuming that health effects due to low-level radiation are linearly proportional to the radiation dose. This assumption is known as the linear hypothesis, and is generally accepted by national and international scientific bodies for the purpose of estimating the possible health risks which might arise from exposure to low-level radiation. However, these estimates of potential risk cannot be identified as expected fatalities.

7. State with specificity the number of genetic effects which you expect to be caused by the continuing operation of the nuclear fuel cycle under your licenses from October 2, 1978 to October 2, 1979.

The above response to Question 6 applies to genetic effects.

8. State with specificity the number of other health effects which you expect to be caused by the continuing operation of the nuclear fuel cycle under your licenses from October 2, 1978 to October 2, 1979.

The above response to Question 6 applies [to] other health effects.

9. State whether or not you believe that some ionizing radiation escaping from the nuclear fuel cycle under your licenses from October 2, 1978 to October 2, 1979 will intrude onto or into the body of the plaintiff.

It is possible that plaintiff will receive a small radiation dose as a result of nuclear fuel cycle activities.

10. State whether or not you have adopted the linear hypothesis which states that any amount of ionizing radiation has an adverse effect on human health.

The Commission has adopted the linear hypothesis for purposes of licensing and policy decisions and setting regulatory standards. The Commission regulations require nuclear fuel cycle licensees to conduct their operations in a manner which limits the radiation dose to the public to be as low as reasonably achievable. 10 CFR 20.1(c). The linear hypothesis does not state that any amount of ionizing radiation has an adverse effect on human health. It is an assumption which permits a hypothetical estimation of potential risks at low radiation doses by extrapolating from actual risk data at much higher doses. Federal Defendants' Answers to Plaintiff's Interrogatories at 3–5.

In the NRC Staff Response to the Jeannine Honicker Petition, the following synopsis of the staff's position was presented:

It has not been scientifically established or proven that there are any health effects (risk) from the very low levels of human population radiation exposure (dose) that result from normal operation of the nuclear fuel cycle.

Nevertheless, in carrying out its responsibilities under the Atomic Energy Act of 1954, as amended, and the National Environmental Policy Act of 1969 (NEPA), the NRC assumes that some very low dose rate health effects can be extrapolated from data on health effects at very much higher dose rates, and it takes the prudent course of using standards for radiation protection based on this assumption.

Once the assumption is made that human health effects may occur at the very low radiation exposure levels that do occur, one can, and the NRC staff does, calculate health effects for comparison and cost-benefit analysis purposes, and for assuring that the requirements of the regulations are met in licensing actions. Such health effects numbers should be recognized for what they are, namely, probabilities that the effects may occur in a very large population sample, and at sometime in the lifetime of the individuals in the exposed population.

NRC Staff Response to the Jeannine Honicker Petition at 1. This synopsis does not, of course, represent a position adopted by the NRC itself.

thus required to determine what health risk is present. The court therefore defers to the NRC, and because any final resolution of the matter by that agency is exclusively reviewable in the court of appeals, the court sees no reason not to dismiss this cause in its entirety.