The FIRST NATIONAL BANK OF SCOTIA, et al., Plaintiffs,

v.

UNITED STATES of America, et. al., Defendants.

Civ. A. No. 81–1905.

United States District Court, District of Columbia.

Jan. 15, 1982.

---

C. Westbrook Murphy, Lee T. Ellis, Jr., Rebecca L. Jackson, Washington, D. C., for plaintiffs.

Rebecca L. Ross, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

In this action the First National Bank of Scotia and two of its principal officers seek review of a decision reached by the Comptroller of the Currency which denied plaintiffs' request for modification of a final "cease and desist" order issued under the provisions of the Financial Institutions Supervisory Act of 1966, as amended, 12 U.S.C. § 1818 (1976) ("FISA"). The Comptroller's final order to cease and desist from certain unsafe and unsound banking practices has already been reviewed and affirmed by the United States Court of Appeals for the Second Circuit pursuant to 12 U.S.C. § 1818(h)(2); however, that court is currently entertaining plaintiffs' appeal from the Comptroller's denial of their request for modification of the same cease and desist order. The matter is currently before the Court on defendants' motion to dismiss this action for lack of subject matter jurisdiction. See Fed.R.Civ.P. 12(b)(1). Plaintiffs have in turn moved for a stay of proceedings pending disposition of their petition for review by the Court of Appeals for the Second Circuit. After carefully examining the motions filed by the parties, the memoranda of points and authorities in support and opposition thereto, and the entire record of this action, the Court concludes that it has no jurisdiction to review or otherwise affect by injunction the Comptroller's ruling on plaintiffs' motion to modify the aforementioned final order to cease and desist from certain unsound banking practices. Accordingly, defendants' motion to dismiss will be granted, and plaintiffs' motion for a stay of proceedings will be denied.

## BACKGROUND

On February 12, 1980, the Comptroller of the Currency initiated cease and desist proceedings against plaintiffs by serving them with a notice alleging numerous unsafe and unsound banking practices and violations of 12 U.S.C. § 371d (1976). See 12 U.S.C. § 1818(b). After plaintiffs had been accorded an adversary hearing, an administrative law judge recommended that the Comptroller enter a cease and desist order against them. That order was signed by the Comptroller on November 20, 1980, and became effective on December 24, 1980.

Shortly thereafter plaintiffs filed a petition for review of the Comptroller's final order to cease and desist in the United States Court of Appeals for the Second Circuit. In this petition plaintiffs argued that the Comptroller's findings were unsupported by substantial evidence, and that the remedial measures ordered by the Comptroller were beyond the scope of his statutory powers. However, on April 9, 1981, the Court of Appeals rejected their arguments by affirming the cease and desist order in all respects.[1] See *The First National Bank of Scotia v. United States*, 659 F.2d 1059 (2d Cir. 1981). And on November 9, 1981, the United States Supreme Court denied plaintiffs' petition for certiorari.

The second round in this litigation began on May 18, 1981, when plaintiff filed a motion with the Comptroller seeking modification of his final order to cease and desist in the following respects: 1) a reduction in the amount of additional capital injection from $1.5 million to $750,000; 2) an extension of time in which to raise the new capital; and 3) elimination of references to any violation of 12 U.S.C. § 371d. Counsel for the Comptroller's Enforcement and Compliance Division opposed plaintiffs' motion but submitted a cross-motion to modify which proposed to reduce the additional capital figure to $750,000 and require the Bank to maintain an equity capital to total asset ratio of eight percent. On June 29, 1981, the Comptroller entered an order granting the relief requested by counsel for the Comptroller's Enforcement and Compliance Division and denying plaintiffs' motion for modification.[2]

On July 12, 1981, plaintiff filed a petition in the United States Court of Appeals for the District of Columbia Circuit pursuant to 12 U.S.C. § 1818(h)(2), seeking review of the Comptroller's June 29 order denying plaintiffs' motion for modification of the original cease and desist order. That petition was subsequently transferred to the Court of Appeals for the Second Circuit pursuant to the Comptroller's motion, and it is currently under review by that court.

Finally, on August 12, 1981, plaintiffs filed the instant action for declaratory and injunctive relief pursuant to 5 U.S.C. §§ 701–706 (1976) and 28 U.S.C. §§ 2201, 2202 (1976), seeking duplicative review of the Comptroller's final order of June 29, 1981. Subject matter jurisdiction was premised upon the general federal jurisdictional statutes, 28 U.S.C. §§ 1331, 1332, 1337, 1346, and 1361 (1976). Plaintiffs contend that the Comptroller's June 29 order is arbitrary and capricious and unsupported by substantial evidence; they also assert that the Comptroller's denial of their request for an oral hearing and for consideration of settlement is violative of their due process rights and inconsistent with the procedure established by statute and by the Comptroller's own regulations. The defendants have responded with a motion to dismiss the complaint on the ground that 12 U.S.C. § 1818(h)(2), (i) deprive federal district courts of subject matter jurisdiction to review, modify, or enjoin this type of administrative enforcement action.

The Court originally granted plaintiffs' motion to enlarge the time to respond to the defendants' motion to dismiss until ten

---

1. In its opinion, the Court of Appeals recognized that

 The statute under which the cease and desist order was issued, 12 U.S.C. § 1818 (1976), was enacted to provide the Comptroller with broad authority—short of the "last resort" of appointing a conservator or withdrawing a bank's federally insured status—to employ "flexible and effective supervisory powers" to avoid bank failures and to limit the losses from ongoing improper practices. [Citations omitted]. Consistent with that purpose the statute gives the Comptroller broad authority to identify unsafe and unsound banking practices, ... and equally broad authority to fashion remedial orders to require banks not only to "cease and desist" from such practices, but also to take affirmative action to correct the conditions resulting from those practices. *The First National Bank of Scotia v. United States of America*, No. 80–4256, slip op. at 2 (2d Cir. April 9, 1981).

2. That order was issued on the basis of the papers submitted by counsel for the parties. The Comptroller denied plaintiffs' request for an oral hearing on the matter and for consideration of settlement.

days after the Court of Appeals for this Circuit acted on the Comptroller's separate motion to dismiss or transfer the parallel petition filed by plaintiffs which seeks appellate review of the Comptroller's denial of plaintiffs' request for a modification of the original cease and desist order. The Court of Appeals granted the Comptroller's motion to transfer the petition for review on November 12, 1981, and plaintiffs have now moved to stay all further proceedings in this court pending final disposition of their petition for review, which is currently being considered by the Court of Appeals for the Second Circuit. The defendants oppose any further stay and argue that the motion to dismiss the action should be granted immediately.

## DISCUSSION

The statutory scheme set out in FISA grants federal agencies such as the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and the Federal Reserve Board wideranging supervisory and enforcement authority over our nation's banking system. *See* 12 U.S.C. § 1813(q). These agencies are charged with the task of overseeing that banking system for the protection of the public and the national economy as a whole, and not for the benefit or protection of individual banking institutions. *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 210, 215 (E.D.N.Y.1979). The most significant of their supervisory powers is the capacity to issue and enforce cease and desist orders. 12 U.S.C. § 1818. The agencies may draw upon this power to prevent a bank from violating any agreements with the Comptroller; to remedy vio-

lations of any "law, rule, or regulation, or any condition imposed in writing by the agency in connection with the granting of any application or other request by the bank," 12 U.S.C. § 1818(b)(1); or to prohibit any banking practice or procedure that the Comptroller deems to be "unsafe or unsound." *Id.* In short, cease and desist orders can be utilized to regulate virtually every aspect of a bank's business. *See, e.g., Groos National Bank v. Comptroller of the Currency*, 573 F.2d 889 (5th Cir. 1978).

Given the magnitude of the public and private interests that are impacted by such extensive agency regulation of financial institutions, it is not surprising that Congress has seen fit to prescribe a specific statutory mechanism for obtaining judicial review of agency enforcement actions in this area. The procedure outlined in 12 U.S.C. § 1818(h)(2) places judicial review of agency cease and desist orders firmly in the hands of the United States Circuit Courts of Appeal.[3] At the same time, however, Congress has provided the federal district courts with limited jurisdiction over three types of controversies stemming from the issuance of cease and desist orders. *First*, under 12 U.S.C. § 1818(c)(2), the district courts are granted jurisdiction to issue injunctive relief "setting aside, limiting, or suspending the enforcement, operation, or effectiveness" of *temporary* cease and desist orders issued by a supervisory agency. *Second*, the district courts may, upon application of the appropriate agency, issue an injunction designed to enforce the terms of such temporary cease and desist orders. *See* 12 U.S.C. § 1818(d). *Third*, the district courts may exercise jurisdiction to order the

---

**3.** The relevant provision states in part:

(2) Any party to the proceeding, or any person required by an order issued under this section to cease and desist from any of the violations or practices stated therein, may obtain a review of any order served pursuant to paragraph (1) of this subsection . . . by the filing in the court of appeals of the United States for the circuit in which the home office of the bank is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order, a written peti-

tion praying that the order of the agency be modified, terminated, or set aside.

The statutory provisions governing the administrative issuance and appellate review of cease and desist orders have been characterized as establishing "a closely meshed administrative structure through which the Comptroller may curtail unsafe banking practices or legal violations through cease and desist orders that are reviewable in the circuit courts. . . ." *Groos National Bank v. Comptroller of the Currency, supra*, at 894.

enforcement of any outstanding notice or order issued by an agency under section 1818. *See* 12 U.S.C. § 1818(i). Aside from these carefully delineated circumstances where federal district courts are granted jurisdiction over cease and desist controversies, Congress has categorically determined that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order." *Id.*

 It is apparent to the Court that this scheme of judicial review established by Congress and codified in 12 U.S.C. § 1818(h), (i) deprives it of subject matter jurisdiction over the instant action. It is by now well-established that all federal courts, with the exception of the Supreme Court, derive their jurisdiction from the authority conferred upon the Congress by Article III, Section 1 of the United States Constitution. *See, e.g., Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 448–49, 12 L.Ed. 1147 (1850). When Congress decides to withdraw jurisdiction from the lower federal courts, the judicial inquiry is confined to ascertaining whether the action before the Court falls within the class of controversies that Congress intended to remove from judicial purview. Here Congress has plainly and unequivocally divested the district courts of jurisdiction over any dispute arising from agency action initiated under 12 U.S.C. § 1818, subject only to certain exceptions delineated by the statute. Plaintiffs have not, and indeed cannot, argue that any of those exceptions are applicable to the present controversy; as such, both common sense and the language of the statute preclude this Court from exercising jurisdiction over this cause of action.

 It is also well-settled that "[w]here Congress has provided an adequate procedure to obtain judicial review of agency action, that statutory provision is the exclusive means of obtaining judicial

review in those situations to which it applies." *Memphis Trust Company v. Board of Governors of the Federal Reserve System*, 584 F.2d 921, 925 (6th Cir. 1978). *See also Whitney National Bank v. Bank of New Orleans & Trust Company*, 379 U.S. 411, 419–23, 85 S.Ct. 551, 556–59, 13 L.Ed.2d 386 (1965); *Nader v. Volpe*, 151 U.S.App. D.C. 90, 95–96, 466 F.2d 261, 266–67 (1972). General nonstatutory review of administrative action is available only in the absence of a specific statute authorizing review in a particular court. *Memphis Trust Company v. Board of Governors of the Federal Reserve System, supra; Honicker v. Hendrie*, 465 F.Supp. 414, 418 (M.D.Tenn.1979). *See generally* Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 Harv.L.Rev. 980 (1975). In fact, even where Congress has not expressly conferred exclusive jurisdiction, "a special review statute vesting jurisdiction in a particular court cuts off other courts' original jurisdiction in all cases covered by the special statute." *Investment Company Institute v. Board of Governors of the Federal Reserve System*, 179 U.S.App. D.C. 311, 320, 551 F.2d 1270, 1279 (1977). *See also Macauley v. Waterman S. S. Corporation*, 327 U.S. 540, 543–45, 66 S.Ct. 712, 713–14, 90 L.Ed. 839 (1946); *UMC Industries, Inc. v. Seaborg*, 439 F.2d 953, 955 (9th Cir. 1971). Based on this reasoning, the Court would have no difficulty in concluding that it lacked subject matter jurisdiction over this action even if the specific exclusionary provision of 12 U.S.C. § 1818(i) was not part of the statute, for the establishment of a direct review procedure in the Circuit Courts of Appeal under 12 U.S.C. § 1818(h)(2) is by itself sufficient to preclude district court jurisdiction over actions of this type which effectively seek the review, modification, suspension, termination, or setting aside of final orders entered by the Comptroller. The express statement of exclusivity contained in subsection (i) merely articulates what is already implicit in the language of subsection (h)(2).[4] For these reasons, none of the gen-

---

4. Contrary to plaintiffs' assertion that the provisions of section 1818 governing judicial re-

view of final agency action do not encompass

eral jurisdictional statutes cited in the complaint are operative here, because those provisions confer jurisdiction upon this Court only to the extent that Congress has previously carved out a role for the district courts in the more focused and controlling statutory scheme set forth in 12 U.S.C. § 1818.[5]

 In opposing the defendants' motion to dismiss, plaintiffs rely heavily upon the rule in *Investment Company Institute v. Board of Governors of the Federal Reserve System, supra,* 179 U.S.App.D.C. at 321, 551 F.2d 1270, that "[i]f any doubt as to the proper forum exists, careful counsel should file suit in both the court of appeals and the district court ...." The short answer to plaintiffs' effort to ascribe controlling weight to that admonition is that it is wholly inapplicable to the facts of this case. By its own terms the cautionary rule of *Investment Company Institute* authorizes dual filing only when doubt exists as to the appropriate forum in which to obtain judicial review of agency action. Whatever jurisdictional uncertainty may have existed in *Investment Company Institute,* which arose under the exclusivity provisions of section 9 of the Bank Holding Company Act, 12 U.S.C. § 1848, is not present in this action, where FISA provides *explicit* guidance on the proper jurisdictional limits of the district courts in reviewing agency enforcement actions. *See* 12 U.S.C. § 1818(i). Section 1818 provides a comprehensive

framework for regulatory enforcement and judicial review at various stages of the enforcement process; "and section 1818(i) in particular evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention" in the absence of a clear administrative departure from statutory authority. *Groos National Bank v. Comptroller of the Currency, supra,* at 895. Where, as here, Congress has established a detailed statutory procedure for obtaining judicial review of administrative action in the Courts of Appeal, litigants may not avail themselves of the externalized medium of collateral attack in the district courts to thwart the legislative design. *See, e.g., Whitney National Bank v. Bank of New Orleans & Trust Company, supra,* 379 U.S. at 421–22, 85 S.Ct. at 557–58; *Marshall & Ilsley Corporation v. Heimann,* 652 F.2d 685, 699–702 (7th Cir. 1981); *American Local Company v. United States Department of Labor,* 639 F.2d 659 (10th Cir. 1981).

 Plaintiffs also cite *Dunlop v. Bachowski,* 421 U.S. 560, 567–68, 95 S.Ct. 1851, 1857–58, 44 L.Ed.2d 377 (1975) and *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967) to support the proposition that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is a persuasive reason to believe that such was the purpose of Congress." *Abbott Labora-*

an administrative denial of a motion to modify a cease and desist order, the Court is of the opinion that these provisions would make little sense if a plaintiff initially rebuffed in the Court of Appeals could overcome the intended preclusive effect of 12 U.S.C. § 1818(h)(2) by the simple expedient of petitioning the Comptroller for modification of the original cease and desist order *and then* shopping for more favorable results in the district court. The Court is unwilling to assume that Congress enacted 12 U.S.C. § 1818(h), (i) as an exercise in futility.

**5.** Neither the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.,* nor the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, compels a different conclusion. Section 703 of the APA expressly states that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute" where such

review is available and adequate. Moreover, section 702 provides in relevant part that

Nothing herein 1) affects other limitations on judicial review or the power to deny relief on any other appropriate legal or equitable ground; or 2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Finally, neither the APA nor the Declaratory Judgment Act was designed to expand the jurisdictional foundations of the federal courts. Rather, those statutes merely provide additional remedies and procedures where jurisdiction has already been conferred by statute. *See, e.g., Skelly Oil Company v. Phillips Petroleum Company,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir. 1978).

*tories, supra,* at 140, 87 S.Ct. at 1510. However, the presumption in favor of judicial review of agency action is in no sense threatened by a congressional determination to endow the Circuit Courts of Appeal with exclusive review authority over a limited range of agency decisions. The presumption of reviewability spelled out by the Supreme Court in *Abbott Laboratories* and *Dunlop* was not intended to give litigants a vested right to obtain review of agency action at any level of the federal judiciary; one forum is decidedly sufficient.[6]

 Finally, the Court cannot accept plaintiffs' contention that the allegations of procedural irregularity in the complaint reveal "a clear departure from statutory authority", *Manges v. Camp,* 474 F.2d 97, 99 (5th Cir. 1973) and justify an assumption of jurisdiction in contravention of the language of 12 U.S.C. § 1818(i). It is of course true that "even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority . . . ." *Briscoe v. Bell,* 432 U.S. 404, 408, 97 S.Ct. 2428, 2430, 53 L.Ed.2d 439 (1977), quoting *Briscoe v. Levi,* 175 U.S.App.D.C. 297, 303, 535 F.2d 1259, 1265 (1976). Nevertheless, the Court does not believe that plaintiffs' allegations of procedural improprieties amount to such a palpable violation of substantial rights irremediable by the prescribed method of appellate review that the Court *must* make nonstatutory remedies available. Plaintiffs will presumably have ample opportunity to develop their allegations before the Court of Appeals.

To summarize, the Court believes that exercising jurisdiction over this controversy would be wholly unwarranted in light of the carefully calibrated scheme of exclusive appellate review established by 12 U.S.C. § 1818(h)(2), (i). Regardless of how plaintiffs choose to style their complaint, they are essentially asking the Court to accomplish exactly what the statute prohibits by reviewing, setting aside, modifying, and/or enjoining the enforcement of the Comptroller's order. Whether the Comptroller's findings are supported by substantial evidence, and whether the procedures utilized by the Comptroller comport with constitutional and statutory requirements, are questions to be decided, if at all, by the Court of Appeals for the Second Circuit as it exercises its power of review under 12 U.S.C. § 1818(h)(2). The defendants' motion to dismiss will be granted, and the plaintiffs' motion for a stay of proceedings will be denied. An Order consistent with this Memorandum Opinion will be issued on this date.

---

**6.** The Court is aware of the fact that the defendants have already suggested to the Court of Appeals that it "may" lack jurisdiction to review the Comptroller's denial of plaintiffs' motion to modify the cease and desist order. However, the Court of Appeals is certainly capable of ascertaining the appropriate reach of its own jurisdiction without the aid of this Court. Suffice it to say that the absence of subject matter jurisdiction in this Court remains clear, and the Court will not be drawn into any burgeoning dispute over the bona fides of appellate review. Those arguments should be directed to the Court of Appeals.