**FEDERAL HOME LOAN BANK BOARD, Washington, D.C.**

v.

**James D. HAGUE, San Antonio, Texas.**

**Civ. A. No. 87–0547.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

June 16, 1987.

Richard H. Harvey, Jr., Marianne E. Roche, Washington, D.C., Robert S. Rooth, New Orleans, La., for petitioner.

Geoffrey Judd Vitt, Washington, D.C., for respondent.

EDWIN F. HUNTER, Jr., Senior District Judge.

This proceeding began with a petition by the Federal Home Loan Bank Board (FHLBB) to enforce a Cease and Desist Order that was issued by the Bank Board under Section 5(d)(2) of the Home Owners' Loan Act of 1933, *as amended*, (hereinafter, "HOLA"), *see*, 12 U.S.C. § 1464(d)(2) (1982), against Liberty Federal Savings and Loan Association (hereinafter, "Liberty Federal"). Specifically, the Bank Board invokes the Court's jurisdiction under § 5(d)(8)(A) of the HOLA, *see*, 12 U.S.C. § 1464(d)(8)(A), and seeks an order compelling James D. Hague, former officer, director and controlling stockholder of Liberty Federal, to comply with Paragraph 37 of the order by depositing $861,525.00 with the Association in the form of a pledged savings account.

In his response to the FHLBB's petition, Hague raised nine affirmative defenses. His contention is that he is not in violation or else that he should be excused from the requirements of that provision. Hague also asserted five (5) counterclaims against the Bank Board and the Federal Savings and Loan Insurance Corporation (FSLIC) seeking, *inter alia*, to have the entire cease and desist order declared null and void and to permanently enjoin the Bank Board from seeking to enforce the order. The asserted jurisdictional basis for Hague's claim against the Corporation is 12 U.S.C. § 1730(k)(1).[1]

The Bank Board and the Corporation have moved pursuant to Rules 12(b)(1) & (6), Fed.R.Civ.P., to dismiss Hague's counterclaims for, respectively, lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In addition, the Corporation has moved to dismiss the counterclaims against it under Rules 12(b)(4) and 12(b)(5) for insufficiency of process and insufficiency of service of process.

## ISSUES PRESENTED

The Bank Board's petition to enforce the cease and desist order together with Hague's response espousing nine affirmative defenses brings into question the nature and scope of a federal district court's jurisdiction under 12 U.S.C. § 1464(d)(8)(A). Also at issue is whether a valid jurisdictional basis exists upon which Hague may as-

---

1. Hague does not include in his counterclaim against the Bank Board a "short and plain statement of the grounds upon which the court's jurisdiction depends." Rule 8, Fed.R.Civ.P. Presumably, Hague is attempting to aver federal question jurisdiction under 28 U.S.C. § 1331.

sert his counterclaims against the Bank Board and the Corporation.

## BANK BOARD'S PETITION TO ENFORCE UNDER 12 U.S.C. § 1464(d)(8)(A)

On May 5, 1986, the Bank Board approved and issued a final order to cease and desist [2] against Liberty Federal including a stipulation and consent agreement which was executed by a majority of the Bank's directors including Hague. The order was extensive and required Liberty Federal to take specific actions to secure sound business practices and, in some instances, to seek prior approval of the Bank Board. The provision of the order which the Bank Board now seeks to enforce is Paragraph 37 which falls under the caption of the order entitled "Dividends and Stock". Hague's consent to entry of the order and the enforceability thereafter was unequivocal.

Pursuant to Paragraph 37, Hague agreed to deposit $861,525.00 with Liberty Federal in the form of a pledged savings account within fifteen days of the effective date of the order. The deposit was to remain pledged to Liberty Federal until the sale of Parker Square Shopping Center [3] in accordance with Paragraph 40.[4] By the terms of Paragraph 37, the Bank Board sought repayment of a dividend that Hague had received in December of 1985.

The proposed exchange of Liberty stock for Hague's equity interest in Parker Square was approved by Liberty's board of directors on July 31, 1985. Hague contributed his equity in return for 200,000 shares of Liberty. Liberty took title to Parker Square subject to existing liens of approximately $8,800,000. This resulted in Hague owning 86.3% of the stock of Liberty Federal. On December 30, 1985 the Board of Liberty voted to declare a dividend of $998,000 of which Hague received $861,525. In early 1986 due to Liberty's deteriorated financial condition, the FHLBB began administrative proceedings against Liberty and Hague to obtain a cease and desist order. On May 5, 1986, (approximately four (4) months after Hague had received the $861,525), the Consent Order to Cease and Desist was issued.

Instead of complying with the literal terms of the order, Hague tendered to Liberty Federal in escrow two promissory notes the face amount of which exceeded 1.1 million dollars. The Bank Board notified Hague that the promissory notes were not in compliance with the order and would be rejected. On March 12, 1987, the Bank Board initiated the present action seeking an order requiring Hague to comply with the terms of Paragraph 37 by depositing $861,525.00 in a pledged savings account.[5] In response to the Bank Board's petition to

---

**2.** The Bank Board is authorized under 12 U.S.C. § 1464(d)(2) to issue orders against federal associations including their officers and directors demanding that such entities or persons cease and desist from engaging in unsafe or unsound practices or violations of Title 12 or bank regulations. By the terms of Section 1464(d)(2), cease and desist orders may be obtained either through administrative litigation or by consent of interested parties.

**3.** In 1985, Hague contributed as capital his equity in the Parker Square Shopping Center, located in Wichita Falls, Texas, in exchange for stock in Liberty Federal. Hague now admits that the Bank Board's approval should have been obtained prior to exchanging equity in real estate for stock.

**4.** Paragraph 40 provided that Parker Square Shopping Center would be sold by Liberty Federal within one year from the effective date of the order after obtaining prior approval from the Bank Board's supervisory agent. Liberty Federal was also to submit a progress report on

its efforts to sell the shopping center within sixty days of the effective date of the order and every sixty days thereafter until a sales transaction was submitted for approval. Pursuant to Paragraph 40, Hague was to place in escrow all of the shares of stock that he received from Liberty Federal in exchange for his equity in Parker Square. Upon the sale of the shopping center, the escrow shares would be returned to Mr. Hague in accordance with a formula provided in Paragraph 40.

**5.** Pursuant to its authority under 12 U.S.C. § 1464(d)(6)(A), the Bank Board appointed the Corporation as receiver of Liberty Federal on April 24, 1987. The appointment was made by resolution number 87-481 upon a finding that Liberty Federal was insolvent, had suffered substantial dissipation of assets or earnings due to violations of law, rules or regulations, and was in an unsafe and unsound condition to transact business.

enforce Paragraph 37, Hague has asserted nine affirmative defenses.

Hague's first defense, entitled "Failure of Consideration", is that the Bank Board violated the order and consent agreement by initiating administrative litigation against him,[6] by failing to require Liberty Federal to use its best effort to sell Parker Square[7] and by closing Liberty Federal. Hague's next defense, labeled "Failure to Mitigate Damages", alleges that the Bank Board erred by refusing to allow Liberty Federal to accept the two promissory notes in lieu of the cash deposit of $861,525.00 as required by Paragraph 37. Under this defense, Hague also asserts that the Bank Board failed to use its best efforts to sell Parker Square which had the effect of preventing the bank from recovering proceeds from the sale of the shopping center. Hague also alleges in this defense that the Bank Board failed to prevent foreclosure of Parker Square by not requiring Liberty Federal to cure the default and by refusing to allow the second lienholder to refinance the underlying loan. Hague's next defense is that the Bank Board acted in bad faith by blocking Hague's effort to borrow the $861,525.00 from other institutions. Hague's fourth defense is that his obligation under Paragraph 37 was conditioned on the obligation of Liberty Federal to sell Parker Square at a net profit under Paragraph 40. The failure of Liberty Federal to sell Parker Square, Hague contends, extinguished his obligation to comply with Paragraph 37. In like manner, Hague asserts that his duty under Paragraph 37 was conditioned upon the Bank Board's forbearance of initiating administrative litigation against him and from closing Liberty. Hague argues that the Bank Board's failure to fulfill these conditions excuses his obligation to make the requisite deposit. Hague's fifth defense is one of material compliance in that he fulfilled his obligation under Paragraph 37 by tendering two promissory notes the face amount of which exceeded one million dollars. His sixth defense, entitled "Impracticability and Frustration", is that the depressed real estate and financial markets in the area and certain unexplained actions on the part of the FHLBB operated in a manner to frustrate his efforts to comply with the order and made it impossible for him to obtain the $861,525.00 as required by Paragraph 37. While such a claim may be a defense to a later attempt by the FHLBB to seek contempt for violation of the order, it is clearly not relevant at this time. Hague's seventh defense, which is essentially a rehash of his fourth defense, is that his obligation under Paragraph 37 was discharged by the Bank Board's failure to perform its obligations. Hague's final defenses, "Waiver and Estoppel", assert that the Bank Board's actions and inactions have resulted in a waiver of its right to require compliance with Paragraph 37. There is no material fact issue on waiver. No compelling reason is offered to apply estoppel here. *Heckler v. Community Health*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).

## JURISDICTION UNDER 12 U.S.C. § 1464(d)(8)(A)

■ As indicated, the Bank Board clearly has authority to issue the type of cease and desist order involved here. 12 U.S.C. § 1464(d)(2). Reference is made to 12 U.S.C. § 1464(d)(8)(A):

The Bank Board may in its discretion apply to the United States District Court, for the United States Court of any territory, within the jurisdiction of which the home office of the association is located, for the enforcement of any effective and outstanding notice or order issued by the Board under this subsection (d), and such courts shall have *jurisdiction and power to order and require compliance therewith; but except as otherwise provided in this subsection no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under*

---

**6.** The Bank Board, on April 23, 1987, instituted a removal action against Hague.

**7.** On January 6, 1987, the second lienholder on Parker Square foreclosed on the shopping center after Liberty Federal failed to make payments on the underlying lien.

*this subsection, or to review, modify, suspend, terminate, or set aside any such notice or order.* (emphasis added)

The language "but except as otherwise provided in this subsection" refers to Section 1464(d)(7)(A) and (B) which provide, in pertinent part:

Judicial review of any such order shall be exclusively as provided in this Paragraph 7. Unless a petition for review is timely filed in a Court of Appeals of the United States, as hereinafter provided in subparagraph (B) of this paragraph, ... the Board may at any time, upon such notice and in such manner as it shall deem proper, modify, terminate or set aside any such order ...

Any party to the proceeding, or any person required by an order issued under this subsection to cease and desist from any of the violations or practices stated therein, may obtain a review of any order served pursuant to sub-paragraph (A) of this paragraph (other than an order issued with the consent of the association or the director or officer or other person concerned, or an order issued under paragraph (5)(A) of this subsection), by filing in the Court of Appeals of the United States for the Circuit in which the home office of the association is located, or in the United States Court of Appeals of the District of Columbia Circuit, within thirty days after the date of service of such order, a written petition praying that the order of the Board be modified, terminated or set aside...."

Clearly, Congress sought when enacting this statute to afford the Bank Board considerable discretion in dealing with financial institutions and to expressly restrict judicial intervention. All federal courts, with the exception of the Supreme Court, derive their jurisdiction from and are subject to the authority conferred upon the Congress by Article 3, Section 1 of the United States Constitution. *Lockerty v. Phillips,* 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943); *Sheldon v. Sill.* 49 U.S. (8 How.) 441, 448–49, 12 L.Ed. 1147 (1950).

Congress' intent to limit the jurisdiction of federal district courts in matters relating to financial institutions is adamantly clear. Numerous other provisions virtually identical to the jurisdictional language in Section 1464(d)(8)(A) are to be found throughout Title 12. *See e.g.,* 12 U.S.C. §§ 1730(k)(2) (Involuntary Termination of Federally Insured Status); 1730a(h)(5)(B) (Regulation of Holding Companies); 1786(j)(1) (Termination of Insured Credit Union Status; Removal or Suspension From Office); 1818(i)(1) (Termination of Status as Insured Bank; Cease and Desist Orders; Suspension or Removal of Director or Officer by Federal Deposit Insurance Corporation); 1844(e)(2) (Termination of Activities of Ownership or Control of Non-Bank Subsidiaries Constituting Serious Risks); 2267 (Enforcement Powers of Farm Credit Administration).

Jurisprudence interpreting Section 1464(d)(8)(A) and related provisions emphasize the congressional intent to limit the court's jurisdiction and supports the policy of judicial restraint. *See, Investment Company Institute v. Federal Deposit Insurance Corporation,* 728 F.2d 518, 524–25 (D.C.Cir.1984) (holding that a district court's injunction was invalid to the extent that it was in contradiction with a temporary cease and desist order: "... Section 1818's [12 U.S.C. § 1818(i)(1), *supra* ] circumscription of federal court jurisdiction would be seriously undermined, if not rendered wholly ineffectual, were it read not to apply to an injunction that has exactly the effect it was meant to prohibit."]; *First National Bank of Grayson v. Conover,* 715 F.2d 234, 236–37 (6th Cir.1983) (district court was without jurisdiction under 12 U.S.C. § 1818(i)(1) over bank's action for injunctive relief to prevent enforcement of an order of the comptroller of currency suspending two of the bank's officers); *Groos National Bank v. Comptroller of Currency,* 573 F.2d 889, 894–95 (5th Cir. 1978) (district court was without jurisdiction under 12 U.S.C. § 1818(i)(1) to issue declaratory judgment that consent agreement between comptroller of currency and National Bank and its controlling shareholders was invalid nor did court have jur-

isdiction to enjoin comptroller from enforcement); *Federal Home Loan Bank Board v. Hooper*, 656 F.Supp. 719, 720–21 (W.D.Va.1986) ("Our jurisdiction is limited to ordering the enforcement of an effective and outstanding order issued by the F.H.L.B.B".); *First National Bank of Scotia v. United States*, 530 F.Supp. 162, 166–68 (D.D.C.1982) (same); *Hykel v. Federal Savings and Loan Insurance Corporation*, 317 F.Supp. 332, 334 (E.D.Pa.1970) (district court was precluded under 12 U.S.C. § 1730(k)(2) from considering merits of action wherein savings and loan associations and suspended director thereof sought a judgment declaring unconstitutional provision by which the corporation was authorized to suspend or remove any director or officer of an insured corporation who was charged with a felony).

■ Moreover, where Congress, as under the scheme provided in 12 U.S.C. § 1464(d), has established a detailed statutory procedure for obtaining judicial review of administrative action in the courts of appeal, "litigants may not avail themselves of the externalized medium of collateral attack in the district courts to thwart the legislative design." *First National Bank of Scotia v. United States*, 530 F.Supp. at 168, citing *Whitney National Bank v. Bank of New Orleans and Trust Company*, 379 U.S. 411, 421–22, 85 S.Ct. 551, 558–59, 13 L.Ed.2d 386 (1965). Nevertheless, "even where the intent of Congress was to preclude judicial review, a limited jurisdiction exists in the court to review actions which on their face are plainly in excess of statutory authority...." *Bris-*

*coe v. Bell*, 432 U.S. 404, 408, 97 S.Ct. 2428, 2430, 53 L.Ed.2d 439 (1977), quoting *Briscoe v. Levi*, 535 F.2d 1259, 1265 (D.C.Cir. 1976). In the case at bar, Hague does not contend nor does the court believe that the Bank Board's actions which resulted in the cease and desist order and consent agreement of May 5, 1986, were *ultra vires* of the Bank Board's authority under 12 U.S.C. § 1464. Respondent's position depends upon the addition of words to a statutory provision which is complete as it stands. Adoption of his view would require amendment rather than construction and it must be rejected. Unless exceptional circumstances dictate otherwise "when we find the terms of a statute unambiguous, judicial inquiry is complete". *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981).

In the present case, the statutory language plainly declares the congressional purpose which cannot be annihilated in a proceeding of this nature.[8]

Hague's carefully tailored defenses and counterclaims far exceed the scope of the court's jurisdiction in this proceeding. These defenses, if sustained, would require this court to review and either modify or set aside the cease and desist order. This is precisely what Congress removed from the district court's power when enacting Section 1464(d)(8)(A). The relief sought by Hague in his counterclaims against the Bank Board and the Corporation speaks for itself. Specifically, he seeks to have not only Paragraph 37 of the order declared null and void, but the result would be to void the entire order. In addition, Hague

---

**8.** Arguably, before requiring enforcement under Section 1464(d)(8)(A), a district court has the authority to determine whether the cease and desist order is "effective and outstanding." The instant case poses no problem to resolution of this question as Paragraph 4 of the consent agreement is clear and explicit:

"Liberty and the director stipulate and agree that the attached order shall, upon its issuance, become effective and enforceable as a 'cease and desist order which has become final' as defined in Section 5(d)(13)(A) of the HOLA, 12 U.S.C. § 1464(d)(13)(A), and that the order complies with all requirements of law."

Section 1464(d)(2)(B) provides:

"A cease and desist order shall become effective at the expiration of thirty days after service of such order upon the association or the party or parties so served (*"except in the case of a cease and desist order issued upon consent, which shall become effective at the time specified therein"*), and shall remain effective and enforceable, (except to such extent as it is stayed, modified, terminated, or set aside by action of the board or reviewing court.)" (emphasis added)

In accordance with this provision, then, the cease and desist order became effective upon its issuance on May 5, 1986 and has remained effective and enforceable since that time.

desires to have "the parties restored to the *status quo ante*" and to permanently enjoin the Bank Board from seeking to enforce the order.[9] This court is without jurisdiction to entertain the specific defenses asserted by Hague, and even if we were to do so, it appears they are inconclusive and irrelevant to these proceedings. If his complaints have merit, other avenues are open to him.

## THE ATTENDANT COUNTERCLAIMS

The FSLIC is a federal agency organized pursuant to Title IV of the National Housing Act, as amended, 12 U.S.C. §§ 1724–1730(f). The FSLIC insures the accounts of eligible state-chartered savings and loan associations, various savings banks, and all federal savings and loan associations. 12 U.S.C. §§ 1724(a), 1726(b), 1729(c), 1930; 12 C.F.R. § 500.4. FSLIC operates under the direction of the Bank Board. 12 U.S.C. §§ 1725(a), 1437(b); 12 C.F.R. § 500.4.

The Bank Board is a federal agency organized pursuant to the Federal Home Loan Bank Act, as amended, 12 U.S.C. §§ 1422–1449. The Bank Board has been charged by Congress with responsibility to maintain the financial stability of the savings and loan industry throughout the United States and, as head of the FSLIC, to protect the creditors and depositors of such institutions. The Bank Board is responsible for administration and enforcement of, *inter alia*, the HOLA, 12 U.S.C. §§ 1461–1468, and Title IV of the National Housing Act, 12 U.S.C. §§ 1724–1730(f). *See also* 12 C.F.R. § 500.1.

The Bank Board is empowered under 12 U.S.C. § 1464(d)(6)(A) to appoint the FSLIC as conservator or receiver of a federally-chartered savings and loan association upon a finding that certain threatening conditions exist.[10]

■ Hague's counterclaims against the FSLIC are switched to the administrative track by § 1464(d)(6)(C). He can challenge FSLIC's actions before the FHLBB, and, if unsatisfied, can seek judicial review under the APA. Because the statute prevents him from going forward in any court before seeking FHLBB review, the counterclaims against FLSIC are dismissed without prejudice. *North Mississippi Savings and Loan Association v. Hudspeth*, 756 F.2d 1096, 1103 (5th Cir.1985).

■ The counterclaims against the Bank Board and FSLIC sound in tort and contract. Both entities enjoy sovereign immunity from such suits and may not be sued directly. Rather, the exclusive party against whom a claimant may proceed here is the United States. *Vernell v. U.S. Postal Service*, 819 F.2d 108 (5th Cir.1987); *First Savings and Loan Association v. First Federal Savings and Loan Association*, 531 F.Supp. 251, 254 n. 7. (D.Hawaii 1981); *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir.1965), *cert. denied*, 382 U.S. 892, 86 S.Ct. 185, 15 L.Ed.2d 149 (1965).

As an additional concern, it must be emphasized that the granting of the counterclaims in these proceedings would require us to terminate and set aside the entire Cease and Desist Order. It would be difficult to reconcile such a result with the intent of Congress in enacting § 1464(d)(8)(A).

Respondent's suggested interpolation of the statute to allow counterclaims as a method to "review, modify, suspend, terminate, or set aside the order" draws no support from any source.

The counterclaims must be dismissed. So ordered.

## CONCLUSION

The necessary findings for the issuance of an enforcement order by this court are

---

**9.** The substance of Hague's counterclaims against the Bank Board and the Corporation simply restate the defenses, enumerated *supra*, in the form of a cause of action.

**10.** These conditions include: (i) insolvency in that the assets of the association are less than its obligations to its creditors and others, including its members; (ii) substantial dissipation of assets or earnings due to any violation or violations of law, rules, or regulations, or to any unsafe or unsound practice or practices; and (iii) an unsafe or unsound condition to transact business. 12 U.S.C. § 1464(d)(6)(A).

that (1) there is an effective order issued by the FHLBB outstanding against the respondent, (2) the FHLBB's interpretation of the first sentence of Paragraph 37 of the order is within the plain meaning of the language of the order, and (3) the respondent has violated the first sentence of Paragraph 37.

Under 12 U.S.C. § 1464(d)(8)(A), we have no jurisdiction to review, modify, or set aside the order. Our jurisdiction is limited to ordering the enforcement of any effective and outstanding order issued by the FHLBB.

Upon consideration of the pleadings and the arguments advanced by counsel at the hearing on June 10, 1987, our view is that the cease and desist order issued by the FHLBB against Hague is an effective and outstanding order. He has failed to comply. Accordingly, we will enter an enforcement order pursuant to 12 U.S.C. § 1464(d)(8)(A).

From the "four corners" of the order, *United States v. Armour*, 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), it is clear that on May 20, 1986, the respondent was required to place $861,525 with Liberty in the form of a pledged savings account. *Nothing* is left to interpretation—the date for the deposit is given, the depositee is identified, and the amount and form of the deposit is specified. We decline the invitation to refrain from enforcing the order.[11]

## JUDGMENT

For the reasons stated in the accompanying Memorandum Opinion, it is this day ADJUDGED AND ORDERED:

That the motion of the Federal Home Loan Bank Board filed pursuant to 12 U.S.C. § 1464(d)(8)(A) to enforce its administrative cease and desist order is granted.

IT IS FURTHER ORDERED that the defendant shall be, and he hereby is ordered to deposit $861,525 cash in the form of a pledged savings account, pursuant to Paragraph 37 of the order. This is to be done on or before July 20, 1987.

THUS DONE AND SIGNED on this the 16th day of June, 1987 at Lake Charles, Louisiana.

11. Our duty is to construe a statute consistent with the intent of Congress as expressed in the plain meaning of its language. "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Associations*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1350–51 (1940).